Edward **NELSON** et al., Appellants,

v.

**TEXAS EMPLOYMENT COMMISSION**
et al., Appellees.

No. 12980.

Court of Civil Appeals of Texas.

Galveston.

May 10, 1956.

Rehearing Denied May 31, 1956.

Sewall Myer and Frank Campbell Fourmy, Houston, for appellants.

John Ben Shepperd, Atty. Gen., Sam Lane, Asst. Atty. Gen., Lee G. Williams, Gen. Counsel, Texas Employment Commission, Austin, Wigley, McLeod, Mills & Shirley, Williams & Thornton, Galveston, E. H. Thornton, Jr., Houston, for appellees.

HAMBLEN, Chief Justice.

This case involves the construction of the Unemployment Compensation Act of the State of Texas, Article 5221b–1 et seq., V.A.T.S. All facts were stipulated in the trial court. Material to this appeal are the following portions of such stipulation:

"1. That for a number of years all of the Cotton Compress and Warehouse Owners in Galveston and Local Unions 1453 and 1494 have negotiated labor agreements covering wages, hours and working conditions of all employees working in said plants, except office employees, maintenance employees, supervisory employees and plant guards.

"2. That for a number of years contract negotiations were, and are, conducted by a committee representing all Owners and a committee representing both unions.

"3.' That when negotiations are completed, one contract is jointly executed by all owners and by both unions. Additional copies of such contract are then likewise jointly .executed so that each owner has a copy thereof and each union has a copy thereof. Identical contracts were signed on July 3, 1954, by Locals 1453 and 1494, but each signed separate instruments.

"4. That on the 19th day of June, 1952, such a contract was negotiated and executed between owners and unions covering the period from March 10, 1952 to midnight March 9, 1954, but subject to opening by either side for wage revision only in March, 1953. * * *

* * * * * *

"16. That on January 4, 1954, Galveston Unions served notice upon Galveston Owners that certain alterations and changes were desired to be negotiated and incorporated into a new contract, to be effective *as of March 10, 1954.* * * *

* * * * * *

"21. Numerous negotiation meetings were then held over a period of two months until April 23, 1954, with a representative of the Federal Mediation & Conciliation Service present at the last four to six of said meetings.

* * * * * *

"24. After March 10, 1954, the date upon which the former contract between Owners and Unions expired, Owners and Unions recognized and made known to each other at a negotiation meeting, that

neither side was any longer bound by said contract or any of the provisions thereof.

\*    \*    \*    \*    \*    \*

"26. At no time during negotiations for a new contract, beginning in February, 1954, down to and including May 7, 1954, did the Unions take a strike vote against the Owners, or any of them.

\*    \*    \*    \*    \*    \*

"28. The parties failed to agree on the six items mentioned in No. 22, above, and at 5:00 P.M. on Friday, May 7, 1954, each Owner, acting through supervisory personnel, read to each employee, as said employee received his pay check, the following notice:

"We have been working without a contract for two months. Apparently we have reached an impasse in negotiations with the union due to the question of 'specified gangs.'

"Our shippers are not willing to continue to ship cotton to us until a Contract is signed guaranteeing settled labor conditions in Galveston.

"Therefore, until we have such a Contract, this company will not be open for business. We will not sign a Contract containing 'specified gangs.'

"We want to give you a raise and are willing to do so under a new Contract which does not contain 'specified gangs.'

"29. On Friday, May 7, 1954, at 5:00 P.M., the end of the work week, each owner closed its plant without advance notice to its employees or to the Unions.

\*    \*    \*    \*    \*    \*

"39. Negotiations continued at regular intervals until Saturday, June 26th, 1954, when a contract was agreed upon which provided for pay rates on all classifications of labor equal to those payable under contracts between Houston Owners and Houston Unions, but which did not contain any provisions requiring specified gangs. \*  \*  \*"

Appellants, acting for themselves and for others similarly situated, filed claims for benefits under the provisions of the Unemployment Compensation Act. These claims were denied by the Texas Employment Commission. Appellants sought a review of such action in the District Court of Galveston County. After a hearing, that court declared the decision of the Texas Employment Commission to be reasonably supported by substantial evidence, and decreed that appellants take nothing by their suit. This appeal is from such order.

By their first point of error, appellants complain that since they are not assailing any fact finding of the Texas Employment Commission, the substantial evidence rule has no application. The point is apparently directed to the recitation in the judgment of the trial court heretofore mentioned. We fail to see the materiality of the point, or how the complained of recitation, whether proper or improper, can, under this record, constitute error. It appears to be established that actions to review decisions of the Texas Employment Commission are governed by the substantial evidence rule. Texas Company v. Texas Employment Commission, Tex.Civ.App., 261 S.W.2d 178; Todd Shipyards Corp. v. Texas Employment Commission, Tex.Civ.App., 245 S.W.2d 371. Since in the present case all facts were stipulated, the sole question presented is whether such undisputed facts support the decision of the Commission, and the judgment of the trial court. The question is purely one of law.

The portion of the Texas Unemployment Compensation Act here involved is Article 5221b–3, paragraph (d), which provides:

"Art. 5221b–3. Disqualification for benefits.

"An individual shall be disqualified for benefits:

"(a)   \*   \*   \*

"(b)   \*   \*   \*

"(c)   \*   \*   \*

"(d) For any benefit period with respect to which the Commission finds that

his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute * * *."

Certain exceptions to the applicability of the quoted portion of the statute are not here material. The sole question is whether the quoted portion of the statute, as applied to the undisputed facts here present, disqualifies appellants for benefits under the Act. Appellants present their contention that it does not disqualify them under their points of error Nos. Two and Three. We overrule such points.

The basis of appellants' argument is that to construe the words "labor dispute" as used in the statute, to apply to the facts here involved, and thereby disqualify appellants for benefits under the Act, defeats rather than accomplishes the purpose and intent of the Legislature set forth in Sections 1 and 2 of the Act, Senate Bill No. 5, Acts 1936, Ch. 482, in the following language:

"Section 1. * * *

"Whereas It is detrimental to the moral, civil, and physical well-being of individuals to be sustained by charities and public grants. Past experience has further shown that oftentimes workers are unemployed through no fault of their own and of necessity, are required to live by public charities. It is the purpose of this legislation, and the Legislature declares it to be the purpose of the State by this enactment to provide an orderly system of contributions for the care of the justifiably unemployed during times of economic difficulty, thereby preserving and establishing self-respect, reliance, and good citizenship.

"Sec. 2. The Legislature therefore declares that, in its considered judgment, public good and the general welfare of the citizens of this State require the enactment of this measure, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

According to appellants, this purpose clause of the Unemployment Compensation Act is a declaration by the Legislature that the purpose of the Act is to care for "the justifiably unemployed", and to set up reserves "for the benefit of persons unemployed through no fault of their own." Appellants further argue that the facts here involved conclusively establish that appellants are "justifiably unemployed * * * through no fault of their own." Upon these two premises, appellants reason that under applicable principles of statutory construction paragraph (d) of Article 5221b–3 cannot properly be held to disqualify them for benefits under the Act. The rule of construction to which appellants refer is set forth in Article 10, V.A.T.S., paragraph 6. We are familiar with the rule and have carefully examined the authorities which appellants cite in support of their contention. We do not consider them applicable for the following reasons.

In the first place, it is established law in Texas that the general provisions of a statute must yield to the special provisions. In 39 Tex.Jur. 213, the rule is stated as follows: "In other words, when a statute makes a general provision apparently for all cases and a special provision for a particular case or class, the former yields and the latter prevails in so far as the particular case or class is concerned. In such circumstances, the special provision or statute is regarded as though it were an exception or proviso, removing something from the operation of the general law."

We do not think it can be seriously doubted but that the purpose clause of this statute is a general provision thereof. A careful examination of the statute discloses a wide field, aside from labor disputes, wherein the expressed purpose of the Legislature may properly operate. Under such circumstances, it is our opinion that the general provisions contained in the purpose clause must yield to the specific provisions of Article 5221b–3, paragraph (d).

Secondly, both litigants identify the situation created by the undisputed facts in this record as constituting a "lockout".

While the Unemployment Compensation Act does not define the term "labor dispute", Article 5221b–3, paragraph (c)(2), does provide that a claimant for benefits shall not be disqualified for refusing to accept an offer of work "if the position offered is vacant due directly to a strike, lockout, or other labor dispute; * * *." The quoted language makes it clear to this Court that a "lockout" is a labor dispute, as that term is used by the Legislature.

In the third place, Article 5221b–3 sets forth numerous situations in which an individual shall be disqualified for benefits. An examination of the entire article discloses that the question of "justification" or "fault" could not have been the criterion upon which the Legislature determined the disqualifications provided for.

Finally, while both litigants concede that the specific subsection of the Act has not been previously construed by an appellate court in Texas, appellees cite numerous authorities from other jurisdictions wherein similar statutes have been construed contrary to appellants' contention here. Appellants cite no authority supporting their contention, wherein analogous legislation is involved. In 81 C.J.S., Social Security and Public Welfare, § 185, page 279, the following language is employed:

"As a general rule, in the absence of a statutory provision requiring a conclusion to the contrary, the fault or responsibility behind a work stoppage or loss of employment is immaterial in determining whether a claimant is disqualified under a statute denying benefits to a person whose unemployment is caused by a labor dispute; and this has been held true notwithstanding the general policy of the statute to provide compensation for those who become unemployed through no fault of their own. Accordingly, the absence of fault on the part of a claimant is not determinative of whether a labor dispute exists and whether such dispute is the cause of the unemployment, and an employee who leaves his employment because of a labor dispute is ineligible for benefits even though the employer is in the wrong."

The authorities cited in support of the text are too numerous to set forth here.

We, therefore, conclude that appellants' points are not well taken, and that the judgment of the trial court must be affirmed.

Affirmed.