David S. BROWN et al., Appellants,

v.

## TEXAS EMPLOYMENT COMMISSION and Nipak Inc., Appellees.

No. 5557.

Court of Civil Appeals of Texas, Waco.

Aug. 19, 1976.

Rehearings Denied Sept. 9, 1976.

Clinton & Richards, Austin, for appellants.

Michael E. Stork, Austin, Peter R. Thompson, Dallas, for appellees.

OPINION

JAMES, Justice.

This is an unemployment compensation case. Appellants David S. Brown and two others (hereinafter called "claimants") claim benefits under the Texas Unemployment Compensation Act. The question before us is whether claimants are disqualified from receiving such benefits under the provisions of Article 5221b–3(d), Vernon's Annotated Texas Statutes. The Texas Employment Commission (hereinafter called "the commission") by its order held claimants to be disqualified. Claimants secured judicial review of the Commission's order under the provisions of Article 5221b–4(i) by filing this suit against the Commission and Nipak, Inc. (hereinafter called "the company") in the District Court of Navarro County, Texas. The trial court after hearing entered judgment that claimants were disqualified from receiving unemployment compensation benefits, thereby upholding the commission's order and held that claimants take nothing, from which claimants appeal. We reverse the trial court's judgment and hold that Appellant-Claimants are entitled to the unemployment compensation benefits in question.

Claimants were members of the Oil, Chemical, and Atomic Workers Union, Local No. 4–478 (hereinafter called "the union") at all times material to this controversy. Claimants were employees of the company at its manufacturing plant located at Kerens, Texas, and were working under a collective bargaining agreement due to expire June 30, 1971. The union and the company were negotiating a new contract when the old contract expired on June 30, 1971. It was mutually agreed at that time to extend the old contract until July 8, 1971, to provide additional time for negotiations. On the last-named date it was agreed that a proposal made by the company would be submitted to the union local membership on July 9, 1971; accordingly the existing contract was again extended to 5:00 P.M. July 9, 1971. The union local membership voted to reject the company's proposal; whereupon the union's representative, Billy R. Butler contacted the company's plant manager, C. R. High, by telephone, told him that the proposal had been rejected and that the federal mediator would be contacted so that further negotiations could be held. High requested Butler to call him back in about thirty minutes. When Butler called back, High asked him if the union membership was still assembled, to which Butler replied they were not. At this point High told Butler that the company "would not need the employees" after midnight, to which Butler replied that the employees were ready to work without a contract or under the old contract. The following day Butler sent a letter to High reiterating "a standing offer of the readiness of the employees to resume work."

On the evening of July 9, 1971, the employees (including claimants) who had reported to work at 4 P.M. continued to work until relieved from their duties by other personnel at or about 10 P.M., and were instructed to assemble in the auditorium near the main gate. Employees scheduled to report to work at midnight were not permitted to enter into the plant but were told by a Mr. Woolverton, the company superintendent, that "the company wouldn't need us anymore as of midnight."

The Kerens, Texas, plant customarily operated twenty-four hours a day continuously, with normally seventeen employees on each eight hour shift. Claimants herein were three of these employees. After midnight July 9, 1971, the plant continued to operate without interruption by the use of supervisory and non-union personnel, until on or about December 1, 1971, when the controversy was terminated and those persons who had not found other employment returned to work.

On July 10, 1971, the union established a picket line, and no union members crossed the picket line until a new contract was

successfully negotiated between the union and the company on or about December 1, 1971. When the new contract went into effect in December, 1971, all union members were allowed to return to work. No letters of termination had been sent by the company to any union member during the labor dispute from July until December, 1971; and during this time the union members were locked out of the plant, the union members were covered by the company's group hospitalization plan.

What we have here is a lockout situation. A "lockout" is the employer's withholding of work from his employees in order to gain a concession from them, and is the employer's counter-part of a strike. See 62 A.L. R.3d 448. A lockout is a "labor dispute" within the meaning of Article 5221b–3, Vernon's Ann.Tex. Statutes. *Nelson v. Texas Employment Commission* (Galveston CA 1956), 290 S.W.2d 708, writ refused.

Appellees contend that claimants are disqualified under the provisions of Article 5221b–3(d). The pertinent language of Article 5221b–3 reads:

"An individual shall be disqualified for benefits:

.      .      .      .      .

"(d) For any benefit period with respect to which the Commission finds that his total or partial unemployment is (i) due to the *claimant's stoppage of work* because of a labor dispute at the factory, establishment, or other premises (including a vessel) at which he is or was last employed, .   .." (emphasis supplied).

Since there was a lockout in this case, and since a lockout is a "labor dispute," the question before us is: what is meant by the term, "claimant's stoppage of work"?

Appellant-Claimants contend that in a lockout situation, the unemployment is caused by the employer's preventing the employees from working until a new contract is agreed upon; and that, therefore, the claimant-employees have not stopped work. Rather, the employer has, by his action in locking out the employee-claimants, prevented the employees from working. The issue to be determined is the *cause of the involuntary unemployment.* Our Supreme Court has held that when a workman crossed his own picket line during a strike and was refused employment because there was no work available, a new "cause of involuntary employment" had then replaced the original disqualifying cause, that is, the workman's stoppage of work because of a labor dispute; and thereby held that the original disqualification no longer existed after claimants were refused work because no jobs were available. *Kraft v. Texas Employment Commission* (Tex.1967), 418 S.W.2d 482, citing with approval this court's holding in *Texas Employment Commission v. Hodson* (Waco CA 1961), 346 S.W.2d 665, NRE.

In the case at bar, the "cause of the involuntary unemployment" was not the "claimant's stoppage of work," but was on the contrary the company's preventing the claimants from working by way of locking them out. Here, the employees and the union had manifested every intention of being ready and willing to continue working under the old contract or without a contract, pending negotiation of a new contract.

Appellees argue that since the company never did send termination notices to the employees, and since it paid premiums on the employees' hospitalization insurance, and since the company permitted the union members to return to work on or about December 1, 1971, when the new contract went into effect, that the stoppage of work was the "claimants' stoppage of work." We do not agree. The fact remains that claimants were locked out of their jobs by the company from July 10, 1971, to on or about December 1, 1971, without pay, and during this time claimants were ready, willing, and able to have continued working but for the lockout by the company. We are unable to see how claimants' involuntary unemployment under these facts could be construed to be due to the "claimant's stoppage of work." Instead, it was the company's stoppage of work.

Accordingly, we hold that the claimants' involuntary unemployment is not due to the claimants' stoppage of work, and therefore that claimants are not disqualified to receive the unemployment compensation benefits from July 10, 1971, to December 1, 1971. It has been stipulated by and between all parties hereto that the benefits in dispute for each claimant amounts to $810.00, to which amount each claimant would have been entitled and would have received but for the disqualification asserted by Appellees.

The Unemployment Compensation Act is remedial in its nature and should be construed liberally to give effect to its beneficent purposes. *Meggs v. Texas Unemployment Compensation* (Fort Worth CA 1950), 234 S.W.2d 453, writ refused.

We hereby reverse the trial court and render judgment in favor of each claimant, to-wit, David S. Brown, Roy L. Alexander, and John D. Wilson, in the amount of $810.00.

REVERSED AND RENDERED.