Férrelli, Appellant, *v.* Leach, Admr. et, Appellees.
Buzzelli, Appellant, *v.* Board of Review, Bureau of
Unemployment Compensation et, Appellees.
Leach, Admr., Bureau of Unemployment Compensation,
Appellant, *v.* Board of Review, Bureau of Unemployment
Compensation et, Appellees.

Common Pleas Court, Franklin County.

Nos. 210711, 210868, 211095.   Decided August 8, 1962.

546

*Mr. A. L. Greenspun*, assistant attorney general, for Administrator of Bureau of Unemployment Compensation.

*Mr. David Clayman*, for Pasquala L. Ferrelli.

*Mr. Dario E. DiPietro*, for James V. Buzzelli.

*Mr. Manuel Weiser*, assistant attorney general, for Board of Review, Bureau of Unemployment Compensation.

*Messrs. Vorys, Sater, Seymour & Pease*, of counsel, *Mr. James P. Kennedy* and *Mr. Herbert R. Brown*, for Marble Cliff Quarries Company.

LEACH, J. These three cases were argued and submitted to this Court at the same time as involving identical or at least similar questions. The basic issue presented in each case is whether a former employee of the Marble Cliff Quarries Company, who retired or was retired on reaching the age of sixty-five under a pension program which was a part of a collective bargaining agreement between Marble Cliff and the employees' union, was thereafter entitled to receive unemployment compensation.

For the sake of simplicity, the former employees will be referred to herein as claimants, the Marble Cliff Quarries Company as the employer, the Administrator of the Bureau of

Unemployment Compensation as the Administrator and the Board of Review of the Bureau of Unemployment Compensation as the Board.

In each case the application of the claimant for unemployment benefits was allowed by the Administrator, both on original application and on reconsideration, on the basis that "if an individual is forced to retire" or "forced to leave his job" because of his age, the "established bureau policy stipulated" that "no disqualification will be imposed," and "it will be held that he was involuntarily unemployed."

In the *Ferrelli case*, on appeal to the Board, the decision of the Administrator was reversed by a referee of the Board, and the application of the claimant to institute a further appeal to the Board was disallowed by the Board, one member dissenting. Thereafter, claimant Ferrelli appealed to this court under the provisions of Section 4141.28, Revised Code.

In the *Buzzelli case*, on appeal to the Board, the decision of the Administrator was reversed by a referee of the Board and an application of the claimant to institute further appeal from the decision of the referee having been allowed by the Board, the decision of the referee thereafter was affirmed by the Board and benefits denied, one member dissenting. Thereafter claimant, Buzzelli, appealed to this court.

In case No. 211,095, involving claimant D'Ippolito, on appeal to the Board, the decision of the Administrator was affirmed by the referee of the Board, but on further appeal to the Board the decision of the referee affirming the decision on reconsideration of the Administrator was reversed and benefit rights were suspended as of the beginning date of claimant D'Ippolito's benefit year and for the duration of the unemployment caused by his separation from Marble Cliff Quarries Company. The claim for the week ending April 23, 1960, was disallowed for the additional reason that claimant D'Ippolito, having undergone surgery for a hernia, was unable to work, according to medical proof, until May 23, 1960. In the case of claimant D'Ippolito, an appeal to this court was then taken by the Administrator.

It is conceded by the Administrator, who is the appellant, as to the claim of D'Ippolito, that he was not able to work in the week ending April 23, 1960 and, therefore, the Administrator

548

in such appeal is not objecting to the order of the Board denying the claim for the week ending April 23, 1960 on such basis.

By labor agreement of January 21, 1960, the employer recognized Local 23, United Stone & Allied Products Workers of America, AFL-CIO as the "exclusive bargaining agent for all employees, for the purposes of collective bargaining with respect to rates of pay, wages, hours of work and other conditions of employment." Reference is made in such labor agreement to "the pension plan" negotiated in connection with this agreement.

The pension plan in question is a non-contributory pension agreement, the entire cost of which is taken care of by the employer. Under the terms of this agreement all regular hourly employees "are eligible to retire and receive pension payments upon completing 15 years of continuous service with the company and upon attaining the age of 65 years or more." The pension agreement further provides:

"a. Any employee who shall have completed the requirements for eligibility as provided in paragraph 2 above may elect to retire at age 65 and upon such election shall have the unqualified right to retire under the provisions hereof.

"If an employee otherwise eligible to retire wishes to continue in his employment and if the Company and the Union are agreeable thereto, such employee may continue in his employment after age 65 until such time as such employee shall reach age 68 (at which time his retirement shall be mandatory), or until such time as such employee shall elect to retire, or until such time as the Company or the Union no longer consents to his continued employment, at which time such employee shall be retired under the terms and provisions hereof.

Those employees on the payroll as of January 1, 1955, who, upon reaching age 68 do not have at least 15 years continuous service, will be retired at age 68 with 15 years service credited to them.

"Any employee hired after January 1, 1955, who upon reaching age 68 does not have 15 years continuous service will nevertheless be retired at age 68 with no pension.

"Notice by an employee of his election to retire, or notice by the Company or the Union that it no longer consents to continue in employment an employee eligible for retirement,

shall be given to a Pension Board. The Pension Board shall consist of two (2) members of management and two (2) members of the local Union. The Pension Board will review the notice by an employee of election to retire or the notice by the Company or by the Union that it no longer consents to continue an eligible employee in employment and will report its findings with respect to eligibility for pension to the Executive Committee for payment.

"In case of disagreement under this plan as to age of an employee, years of continuous service or any other matter on interpretation of this agreement, such disagreements will be settled through the grievance procedure as provided in the contract between the Company and the Union covering wages and working conditions starting with the Fifth Step E."

Each of the claimants therein had completed more than 15 years of continuous service with the employer and had attained the age of 65 years, and thus were "eligible" to retire on the pension therein provided.

By the terms of the pension agreement, retirement at age 68 was mandatory as to all employees under all circumstances, whether "eligible" to retirement on a pension or not. Those employees who had attained age 65 but not yet 68 and who were not "eligible" to retire, apparently could only be discharged for cause. (See Article XIII, Section 1, Labor Agreement.) Those employees within this same age bracket, over 65 but under 68, who were "eligible" to retire had an unqualified right to retire but not an unqualified right to continue in employment until age 68. By the terms of the agreement, an employee "eligible" to retire upon reaching age 65 could continue in his employment only "if the Company and the Union are agreeable thereto" and only "until such time as the Company or the Union no longer consents to his continued employment."

The facts involved in the *Ferrelli case* and the *Buzzelli case* are basically the same. In each of these cases shortly before claimants attained age 65 the union addressed a letter to the employer with copies to the claimant and to the pension board, stating that the claimant "will be eligible for retirement" on a named date and that "Local No. 23 is requesting his retirement at that time." While testifying that they "desired" to continue working, each of these claimants, without protest either to the

union or to the employer and without specifically requesting agreement to continue working from either, routinely went to the office of the employer and executed applications for pension and also for Social Security benefits. In each of these cases there is no evidence that the employer instigated or participated in any way in the decision of the claimant to formally make written application for a pension, except to assist them in filling out the forms. There also is no evidence that the employer participated in any way in the decision of the union to write the letter requesting retirement. Admittedly in these two cases the employer or its agents did not tell either claimant that his job was terminated or that it refused to consent to his continued employment.

In the *D'Ippolito case,* however, the claimant was informed by his supervisor that he was to retire on a certain day, accepted such as a separation from service and thereafter received his pension. In this case, while there is some indication that "neither the Company nor the Union were agreeable to his continued employment after the age of 65," there is no evidence that the union ever wrote any letter requesting he be retired and no direct evidence that the union by any method conveyed to the employer or to the pension board any desire on its part that he be retired. Thus, in the *D'Ippolito case,* so far as the record evidence is concerned, the impetus for claimant's retirement came solely from the employer.

Here we should note that under the provisions of Section 4141.28, Revised Code, the Board is required to file with the Clerk of this Court "a certified transcript of the record of the proceedings before the Board pertaining to the decision complained of, *and the appeal shall be heard upon such record certified by the board.*"

Being thus confined to the certified transcript of the record and the evidence contained therein as to each of the individual cases here under consideration, we cannot conclude merely from the fact that the same employer and the same pension agreement are involved and that each claimant is a member of the same union that these three cases present the same basic factual situation. As noted before, from the actual certified transcript of the individual records, and necessarily eliminating from our consideration any speculation as to evidence which

might or might not have been forthcoming therein but which in any event was not, the *D'Ippolito case* clearly involves a factual situation where the decision that claimant retire came about by virtue of the employer notifying claimant that he was to retire on his 65th birthday, while the *Ferrelli* and *Buzzelli cases* clearly involved factual situations where the employer made no such decision and was accorded no opportunity to make any such decision.

In each of these cases the Board denied benefits on the basis that the claimant had "quit his work without just cause." Section 4141.29 (D)(2)(a), Revised Code. The issue to be determined by this Court is not whether we would have reached the same conclusion as that reached by the Board but whether such decisions were "unlawful, unreasonable, or against the manifest weight of the evidence." Section 4141.28, Revised Code; *The Brown Brockmeyer Co.* v. *Roach,* 148 Ohio St., 511, 518.

In these cases counsel for the employer and counsel for the Board assert that such decisions should be affirmed and counsel for the claimants and counsel for the Administrator assert that they should be reversed (with the exception, as noted before, of the decision of the Board in the *D'Ippolito case* as to the claim for the week ending April 23, 1960, which is conceded to be correct). Extensive briefs have been filed by counsel for the Board, counsel for the Administrator, counsel for the employer, and individual counsel for two of the claimants, Ferrelli and Buzzelli. Many cases have been cited by respective counsel, all of which have been carefully examined. In this opinion, however, we shall refer specifically only to cases involving the effect of collective bargaining agreements for employee pensions on the right of a pensioned employee to receive unemployment compensation benefits, and will not attempt any discussion or rationalization of the many cases involving the impact of other collective bargaining provisions (e. g. pregnancy, vacation shutdown, lay-off in reverse order of seniority, etc.) on the question of unemployment benefits. The issues presented herein appear to be a matter of first impression in Ohio, so far as any court decisions are concerned.

At the outset we wish to dispose of one contention made by counsel for the Board. As we read and understand this con-

tention, it is to the effect that the three claimants were not "available for suitable work and making such effort to obtain suitable work as the administrator may require" and thus "unable to obtain suitable work," Section 4141.29(A)(4) and (5), Revised Code, regardless of whether they did or did not "quit * * * work without just cause," on the basis that they had not pursued their "available remedies to continue work" in that a) they had not "consulted with the company" that they might work beyond the age of 65, and b) they had failed to protest their separation through the grievance procedure of the union. As to such issue the Board (and the referee in the *Ferrelli case*) made no finding to such effect which might lay the groundwork for a court review relative thereto, but instead based its denial of benefits (except for the week ending April 23, 1960, in the *D'Ippolito case*), *solely* on a determination that claimants "quit his job without just cause." To this extent at least, we are in agreement with the opinion of Judge Joseph H. Silbert of the Common Pleas Court of Cuyahoga County, in *Leach* v. *Board of Review*, No. 756,145, decided March 13, 1962 (88 Ohio Law Abs., 483), a copy of which was supplied to this Court and is contained in the files herein.

While the matter of the failure of the claimants to consult with the company might and will be considered in its pertinent relationship to the question of whether claimants "quit * * * work without just cause," it cannot be considered as to the "available and seeking work" question under the state of the records herein. As a matter of fact, in the *Buzzelli case* the decision of the Board specifically states that "claimant has satisfied all normal requirements with respect to an effort to obtain work," and in the other two cases such conclusion seems to be assumed by the absence of any specific reference thereto.

We now turn our consideration to the basic question of whether claimants "quit * * * work without just cause" within the purview of Section 4141.29, Revised Code. As noted before, this issue appears to be a matter of first impression in Ohio. The cases relied upon out of Ohio involving the effect of collective bargaining agreements as to pensions at stipulated ages on unemployment benefits, while sometimes grouped somewhat indiscriminately as upholding or rejecting such benefits, must be separated into at least the following categories:

A) Cases whereby in specific language of the state statute: (1) ineligibility for unemployment benefits is specified upon receipt of a pension, at least when equal to or in excess of such benefits, or (2) benefits are payable despite receipt of a pension regardless of voluntary or involuntary termination of employment.

B) Where the choice of whether to retire or not to retire at a specific age is vested by the pension agreement solely with the claimant and he chooses to retire.

C) Where a claimant has reached the age of mandatory retirement under a pension agreement permitting no exceptions upon reaching a certain age (as would be true herein at age 68).

D) Where a claimant has an absolute right to retire at a specified age but may choose to continue work beyond such age only with the consent of the employer or with the consent of both the employer and the union and 1) the employer refuses such consent, 2) the union refuses such consent or 3) no request for consent is made by the claimant to the employer, or to the employer and the union if both consents are required, but instead routine retirement effected and pension paid.

Examples of category A (1) are *Talley* v. *Review Board*, 88 N. E. (2d), 157 (Appellate Court of Indiana), and *Kneeland* v. *Administrator*, 138 Conn., 630, 88 A. (2d), 376. It appears that the State of Massachusetts, by amendment of its statutes subsequent to the decision of *Lamont* v. *Director of Employment Security*, 337 Mass., 328, 149 N. E. (2d), 372, now falls in category A(2).

Prior to the amendment of Section 4141.31, Revised Code, effective October 16, 1959 (128 O. L., 1329), retirement or pension benefits in the form of life annuity payments made by or on behalf of an employer after termination of employment, in accordance with exclusively employer-sponsored and financed retirement plans or pension agreements, prevented the payment of unemployment compensation benefits if the retirement or pension benefits exceeded the unemployment benefits, and, if not, reduced the amount of unemployment benefits in the amount of such payment. By the 1959 amendment this specific provision is eliminated, but its elimination does not necessarily solve the problem as to whether, in an individual case, a claimant "quit his work without just cause" under the provisions of Section 4141.29, Revised Code.

In *Fleiszig* v. *Board of Review*, 412 Ill., 49, 104 N. E. (2d), 818, it was held that an "application for and receipt of retirement benefits and old age assistance is evidence of an intention to retire from gainful labor and discloses a mental attitude inconsistent with a genuine attachment to the labor market." Apparently this holding in Illinois makes no distinction between a voluntary or involuntary termination of employment. Since, in the instant cases, as noted before, the decision of the Board was not based on the question of claimants' availability for suitable work and making efforts to obtain such, the *Fleiszig* case is of no real help in the question here presented.

With the exception of statutes falling under category A(2), the cases appear to support the proposition that where the choice of whether to retire or not to retire at a specific age is vested solely with the claimant and he chooses to retire, he is not entitled to unemployment compensation and that such a retirement constitutes quitting or leaving work "without good cause" or "without just cause." Cases so holding (category B) are *Hall* v. *Board of Review*, 160 Pa. Super., 65, 49 A. (2d), 872; *Campbell* v. *Board of Review*, 175 Pa. Super., 592, 106 A. (2d), 687; *Campbell* v. *Board of Review*, 180 Pa. Super., 74, 117 A. (2d), 799; *Pozniak* v. *Board of Review*, 194 Pa. Super., 179, 166 A. (2d), 71; *Valles* v. *Board of Review*, 194 Pa. Super., 47, 166 A. (2d), 108; *Zelek* v. *Board of Review*, 194 Pa. Super., 228, 166 A. (2d), 110; 1A CCH, p. 4481, Par. 1975.335.

Here we should note that counsel for one of claimants advances the assertion that even if the claimants' separation from work might be considered voluntary and thus a "quit," it was not "without just cause" but with just cause since the "individual must necessarily yield to the dictates of society that he retire at age 65." If the termination of employment of any of the claimants did in fact constitute a "quit" of work, we would conclude both from the authorities cited and from other considerations that such "quit" would be "without just cause."

Under category C, where a claimant has reached the age of mandatory retirement under a collective bargaining pension agreement containing no exceptions, even by consent of the employer, there is a conflict of authority. In *Campbell Soup Co.* v. *Board of Review*, 24 N. J. Super., 311, 94 A. (2d), 514, it was held that the Union as the bargaining agent was the

agent of the individual employees who were members of the union, that under the terms of the collective bargaining agreement retirement was compulsory at age 65, that no discretion was open to the employer and that this fact removed the matter from the realm of involuntariness as to employees and such employees could not repudiate the binding features of the agreement upon attaining retirement age in order to claim involuntary unemployment. This decision, however, was reversed by the Supreme Court of New Jersey, 13 N. J., 431, 100 A. (2d), 287. The opinion of the New Jersey Supreme Court written by Judge Brennan held, in effect, that the inquiry as to whether a claimant "left work voluntarily without good cause" must be "isolated to the time of termination"; that the claimant did not leave voluntarily in the sense that on his own he willed and intended at the time to leave his job but "each claimant resisted his termination and left against his will only upon his employer's insistence that the contract obligation gave neither of them any alternative but to sever the relationship." On this basis the Court concluded that the "leaving was involuntary in the statutory sense." The opinion also held that if the contract with the union operated "as an advance surrender of benefits" under the Unemployment Compensation Law, such would be prohibited by a provision of the New Jersey statute providing that "Any agreement by an individual to waive, release, or commute his rights to benefits * * * shall be void." This statute is similar to Section 4141.32, Revised Code.

In *Bergseth* v. *Zinsmaster Baking Co.*, 252 Minn., 63, 89 N. W. (2d), 172, the Minnesota Supreme Court held that an employee automatically retired from her employment pursuant to terms of a collective bargaining agreement was not entitled to receive unemployment benefits. It was held that under the mandatory provisions of the agreement retirement at the age of 65 was automatic and mandatory; that the employer could do nothing about this under the terms of the agreement; that the claimant was bound by the acts and contracts of her agent, the union; and that under the facts therein the claimant "voluntarily and without good cause attributable to the employer discontinued her employment with such employer." Referring to the *Campbell Soup case* in New Jersey, *supra,* it was stated that the Minnesota Supreme Court did not agree with the rea-

soning of the New Jersey Supreme Court but instead concurred in the views expressed by the appellate division of the superior court of that state (94 A. (2d), 514).

In *Lamont* v. *Director of Employment Security*, 337 Mass., 328, 149 N. E. (2d), 372, the Supreme Judicial Court of Massachusetts also denied unemployment benefits in the case of an automatic and mandatory retirement pursuant to a collective bargaining agreement. The *Bergseth case, supra*, was cited, apparently with approval. The *Campbell Soup case, supra*, was distinguished on the basis that the New Jersey statute contained no such phrase as "attributable to the employing unit or its agent" as was contained in the Massachusetts statute. The rationale of the opinion seems to have been that claimants, speaking through their union, agreed upon reaching a certain age that they would leave their employment and would then receive a pension; that the employer was bound by this agreement; that the cause of termination of employment was jointly attributable to both the employing unit and to the employees, acting through their union, and thus termination was a leaving of work "without good cause attributable to the employing unit or its agent."

If claimants herein had reached the age of automatic mandatory retirement, age 68, we would be faced with the decision as to whether the rationale adopted by the New Jersey Supreme Court in the *Campbell Soup case* is better reasoned and more applicable to Ohio law than that adopted by the Minnesota Supreme Court in the *Bergseth case* and by the Massachusetts Supreme Court in the *Lamont case, supra*. In that event considerations of the importance of the words in the Minnesota and Massachusetts statutes "attributable to" the employer (this language not being contained in the Ohio statute), would then be involved and this issue has been briefed somewhat at length herein. We conclude, however, that we do not have to decide this issue under the facts of the cases here under consideration. We might note in this connection, however, without expressing any opinion relative thereto, that the Ohio statute contains in addition to the words "quit his work without just cause" the additional words "or has been discharged for just cause in connection with his work." The effect of these additional

words, when read in pari materia with the words "quit his work without just cause," we do not determine.

Independently of any conflict of opinion contained therein, the *Campbell Soup case*, the *Bergseth case* and the *Lamont case* all involved situations where, by the terms of the collective bargaining agreement, retirement at a specified age was automatically mandatory and where, *at the time of retirement*, neither the claimant nor the employer had any choice relative thereto.

On the same day that the New Jersey Supreme Court decided the *Campbell Soup case*, it also decided *Krauss* v. *Karagheusian, Inc.*, 13 N. J., 447, 100 A. (2d), 277. The pension agreement there under consideration allowed an employee then 68 years of age the option of retiring on pension or, if the union and the company agreed, to continue in his employment, the pension fund being provided by the employer without contribution by the employees. In that case it was stated in the opinion, also written by Judge Brennan, that "the plaintiff was under no compulsion whatsoever to leave his employment, at least until he attempted and failed to get the consents of the employer and his union to continue in it" but choosing "not to seek these consents" and electing "the alternative given him by the contract to retire and take the pension" would constitute leaving work voluntarily without cause, resulting in disqualification for benefits. The *Krauss case*, therefore, would be classified under D(3) in our separation into categories.

Under category D(1) involving cases where a claimant has an absolute right to retire at a specified age, but may choose to continue work beyond such age only with the consent of the employer, and *where the employer refuses such consent*, is the case of *Warner Co.* v. *Board of Review*. In the *Warner case* the Superior Court of Pennsylvania, 186 Pa. Super., 186, 142 A. (2d), 739, held that where a collective bargaining agreement with an employee retirement plan permitted retirement at age 65, but where the employee could remain in service after attaining age 68 "only with the consent of the Company" and where the claimant on attaining age 68 desired to remain in service but the company refused to consent, the claimant was not entitled to unemployment benefits as such constituted "a voluntary quit." The contention of claimant that since the

employer had the discretion as to whether or not to continue claimant in his employment the agreement did not *compel* retirement at age 68 was rejected by the Superior Court on the basis that the effect of the claimant's agreement with his union "cannot be avoided merely because the employer might have elected not to require compliance." The judgment of the Superior Court in the *Warner case* was reversed by the Supreme Court of Pennsylvania, 396 Pa., 545, 153 A. (2d), 906. The Supreme Court, in effect, held that the determination of whether there was a voluntary quit must be determined not by any consent to retire in the future, if the employer's permission to continue could not be obtained, as contained in the collective bargaining agreement but by the "factual matrix at the time of separation." Another case which should be classified under D(1) is *Reynolds Metals Co.* v. *Thorne*, a decision by the Alabama Court of Appeals of May 19, 1961, a copy of which is contained in the files herein (Writ of Certiorari denied by Alabama Supreme Court, September 14, 1961). Here retirement was permitted at age 65 with certain employment service, with a further provision that persons eligible to retire "shall be required to retire on his 65th birthday * * * unless both the company and the union agree that such employee may continue." In the *Reynolds case* the union agreed that the claimant could continue to work but the employer insisted he retire and refused to so agree. The Court therein concluded that "the sole operative fact that caused this claimant to become unemployed, was the act of the employer in refusing to exercise its option."

In *UIC* v. *Kroehler Mfg. Co.*, a copy of which has been supplied to this Court and is contained in the files herein, the Kentucky Court of Appeals held that where a claimant was required to retire at age 65 "unless a special request to continue in employment was made," the retirement of an employee constituted a "voluntary quitting not attributable to the employment" thus disqualifying the claimant for unemployment benefits.

It will be noted from a review of these cases that no case under category D(1) has denied unemployment benefits on the basis of a voluntary quit on the part of a claimant where the consent of the *employer* is required in order to continue employment and such consent is *refused* except the decision in the

*Warner case* in the Pennsylvania Superior Court, which later was overruled by the Pennsylvania Supreme Court. The *Bergseth* and *Lamont cases, supra,* relied on heavily by counsel for the board and counsel for the employer, did not involve a factual situation where consent could have been given by the employer but was refused, and from our reading and understanding of these opinions they were based in large part on the rationalization that under the terms of the collective bargaining agreement the "employer could do nothing" except to retire the claimant. Whether we agree or disagree with other language contained in the decision of the Pennsylvania Supreme Court in the *Warner case, supra,* or in the decision of the Alagama Court of Appeals in the *Reynolds Metals Co. case, supra,* we do agree with the conclusion stated therein that where the employer refused its consent, which was permissible under the agreement, to continue employment, resulting in a retirement of an employee, such retirement would not be considered as a voluntary termination of employment. Since the word "quit" as contained in the Ohio act connotes a voluntary act not controlled by the *employ*er, we must and do conclude that the decision of the Board in the *D'Ippolito case* must be reversed except for its disallowance of the claim of D'Ippolito for the week ending April 23, 1960. As indicated in our discussion of the facts therein, in that case it would appear that the impetus for claimant D'Ippolito's retirement came solely from the employer which, through its supervisor, notified him that he was to retire on a certain day. The fact that D'Ippolito accepted the decision of the employer (a decision which under the plain and unambiguous terms of the pension agreement it had a right to make), does not thereby convert his termination of employment into a "quit." Insofar as the assertion has been made that he failed to make any grievance relative thereto, it should be noted that such grievance procedure applied only to cases "of disagreement under this plan as to age of an employee, years of continuous service or any other matter of interpretation of this agreement." Since under the plain provisions of the pension agreement the employer had the right to refuse to consent to D'Ippolito's continued employment and since no question as to age or years of continuous service was involved, there could have been no occasion for the exercise of any "grievance procedure."

As to claimants Ferrelli and Buzzelli, however, our conclusion is that the decisions of the Board must be and the same are affirmed. Here the *Krauss case, supra,* comes closest to an analogous factual situation. Here, as in the *Krauss case,* no attempt was made by either Ferrelli or Buzzelli "to get the consents of the employer and his Union to continue" in his employment.

But, say counsel for the claimants and the Administrator, the consent of the union in effect had already been refused by the letter from the union requesting their retirement. Had these two claimants at that time specifically conveyed their "wishes to continue in (their) employment," and had the union then refused to agree to such request, we then would have a clear-cut issue as to the law in Ohio under category D(2). While it is clear from the letter of the union that it did not desire that these two claimants continue in employment, reasonable minds might differ in their conclusions from the evidence as to whether the union would have specifically *refused* its consent to continued employment to its members if such request had specifically been made. While both of these claimants testified as to their "desire" to continue employment, it is for the trier of the fact to determine from all the evidence whether their actions in failing to specifically request continued employment and in failing to lodge any protest with the union as to the letter of the union, which as members they could have done, outweighs their then unexpressed "desire." Accepting "the factual matrix at the time of separation" test as referred to in the *Warner case, supra,* we cannot conclude that the decisions of the Board that claimants Ferrelli and Buzzelli quit their employment with Marble Cliff Quarries Company without just cause are "against the manifest weight of the evidence" or "unlawful" or "unreasonable."

While we would not agree with all of the conclusions reached in the decision of the Board in the *Buzzelli case,* we think that the Board was warranted (regardless of whether we would have reached the same conclusion) in concluding that although claimant contended he did not willingly quit his work, his actions were "only consistent with a quit."

There is nothing in the letter from the union requesting

the retirement which is indicative of any desire on the part of such claimant to continue work or which is inconsistent with any voluntary act of such claimant to then apply, by formal written application, for retirement benefits. Both the union and a claimant could be in agreement as to retirement and a letter from the union "merely requesting" such retirement would not be incompatible therewith. Since the union, under the terms of the labor agreement, is the sole and exclusive bargaining agent for all employees, and since Ferrelli and Buzzelli were members of such union, such a letter could be construed as a request of *all* members of the union, including Ferrelli and Buzzelli, in the absence of some affirmative action or statement by these men disavowing any authorization to the union to speak in their behalf *at such time*. As noted before, nothing of this kind was done by either of these two claimants but instead they routinely applied for and accepted their pensions.

Under this state of the record, even if it be assumed that claimants did not "desire" to retire and accept a pension in the sense that they would have *preferred* not to, nevertheless we must conclude that a trier of the fact would be warranted in concluding that the acts of the claimants in formally applying for and accepting their retirement pension was a voluntary act in the sense that they were under no coercion and not having been discharged by their employer they "quit" * * * work without just cause within the purview of Section 4141.29, Revised Code.

For the reasons herein stated, the decisions appealed from in Case No. 210,711 and Case No. 210,868 are affirmed. The decision appealed from in Case No. 211,095 is reversed except for the determination that the claim for the week ending April 23, 1960, be disallowed. Entries to such effect may be prepared, reserving exceptions.