LEACH, ADMR., ET AL., APPELLANT, *v.* COLUMBUS COATED FABRICS CO., ET AL., APPELLEES.

[Cite as Leach v. Columbus Coated Fabrics Co., 1 Ohio Misc. 41.]

(No. 215842—Decided August 10, 1964.)

In Common Pleas Court of Franklin County.

*Mr. Chester T. Freeman,* for claimant-appellant.

*Messrs. Vorys, Sater, Seymour & Pease,* for employer-appellee.

*Mr. William B. Saxbe,* attorney general, *Mr. H. C. Dutro, Jr.,* for Administrator of Bureau of Unemployment Compensation, appellant.

HARTER, J. This case is in this court on separate appeals by (1) the Administrator of the Bureau of Unemployment Compensation *and* by (2) Fred Lambka, the claimant, from a decision denying benefits under the Unemployment Compensation statutes, Chapter 4141., Revised Code, to such claimant.

This claimant was an employee of the Columbus Coated Fabrics Company, and its successor, continuously from April 3, 1944, to January 1, 1962, when he retired at age 69. Subsequent to January 1, 1962, he filed an application with the Bureau of Unemployment Compensation of the State of Ohio to secure benefits. In such application he stated that he was fully able to work, and available, and was seeking full-time employment. This application was allowed, initially, for the week ending January 13, 1962. In allowing this claim, the Administrator found that the claimant had been "involuntarily separated" from his employment, and it was held that an "involuntary separation" due to age (and being pensioned by the former employer), did not create "disqualification," legally. A request for reconsideration was made by the former employer on the assertion that there had been a "voluntary quitting without just cause" on the part of the claimant under the facts of this particular separation. On reconsidering the claim in the light of the employer's contentions, the Administrator adhered to his earlier determination—in other words, it was again held that the claimant was entitled to benefits.

The employer then filed a Notice of Appeal from the Administrator's decision-on-reconsideration to the Board of Review of the Bureau of Unemployment Compensation. There was a hearing before a referee and a record of the testimony, as then taken, was made up. This proceeding culminated in a finding that the claimant "voluntarily quit his employment without just cause," thus rendering the claimant *ineligible* to receive benefits.

The claimant filed a Notice of Appeal from this referee's decision to the Board of Review itself, but the Board of Review refused to entertain his appeal.

From this refusal by the Board of Review to entertain the appeal, the claimant *and* the Administrator perfected their separate appeals to this Court.

The *issue* presented to me for decision (on facts which are, in effect, undisputed), is whether this clamiant is eligible to benefits under the Unemployment Compensation Law of the State of Ohio—i. e. Chapter 4141., Revised Code,—after he retires at the age provided in the collective bargaining agree-

ment entered into by his union and his employer, when such agreement further provides a pension upon retirement.

In determining the eligibility of an individual to unemployment benefits, the significant statute is Section 4141.29, Revised Code, which provides in Sub-section (D)(2)(a):

"(D) Notwithstanding division (A) of this section, no individual may * * * be paid benefits under the following conditions:

"* * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) he quit his work without just cause or has been discharged for just cause in connection with his work * * *."

All counsel agree, and I hold, that there is no express statutory provision which directly covers a situation such as that presented by this record. Counsel also agree, and I hold, that there has been no reported decision by the Ohio courts which directly bears upon the issue confronting me on this record.

Let us examine in some detail the facts which give the background for this problem.

Before retiring, the claimant, Fred Lambka, had been employed by the Columbus Coated Fabrics Company for approximately eighteen years, as a calender helper. As one of the production employees for the Columbus Coated Fabrics Company, he had been a member of, and was represented by, Local No. 487 of the Textile Workers Union of America, an affiliate of the AFL-CIO. This union had engaged in collective bargaining over a period of years with the Columbus Coated Fabrics Company as to the terms and conditions of the employment of production workers. The unemployment compensation program of the State of Ohio was in effect during all of the eighteen years that the claimant was thus employed.

The last of the series of Union contracts between the Local of the Textile Workers' Union of America and Columbus Coated Fabrics Company, in so far as our problems are concerned, became effective October 22, 1961. All of these Union contracts, including the last one, had provided for pensions for production employees and the present claimant was a direct beneficiary as to the pension phases of the Union contracts.

As of July 1961, the Columbus Coated Fabrics Company was purchased by, and merged into, the Borden Company. The Union contract which became effective October 22, 1961, recognized the rights of production employees to pensions under the prior Union contracts, and also provided for participation by such production employees under a Borden Company retirement income plan—a plan which afforded an increase in pension benefits—such increased benefits to become effective December 1, 1961.

This Union contract contained no *specific* provision relative to age, or ages, of retirement, but did contain a *general* recitation, in that a Union member should have the right to retire voluntarily (and start receiving pension benefits) and the employer should have the right to force retirement of a Union member, upon such Union member's attaining age sixty-five, subject, however, to a year-to-year continuance in employment to the age sixty-eight if certain conditions were met.

The Pension Committee of the Borden Employees' Retirement Income Plan had authority to, and did establish rules and regulations for the administration of the plan. Among such rules and regulations (which were in force at the time the plan became a part of the union-employer agreement of October 22, 1961), was one which dealt with employees who continued in service beyond the normal, age-65, retirement date. I must quote one paragraph which covers that situation:

"1. The normal retirement date of all employees who are members of the Plan is the first of the month following the attainment of age 65. Except in the case of union employees where the provisions of the union contract are such that compulsory retirement cannot be enforced, no member of the Plan may be continued in service beyond his normal retirement date unless such continuation is approved by a senior officer of The Borden Company. Such continuation in service beyond normal retirement date may be approved on a year to year basis and requests for such continuation must be accompanied by a doctor's statement certifying that as a result of a physicial examination the individual is physically able to perform the duties of his occupation. No requests to continue persons in service beyond age 68 may be approved."

There was a discrepancy in the age record of this claimant. When the claimant, Fred Lambka, was first employed by Columbus Coated Fabrics Company, he had submitted an employment application which recited that he had been born in 1893, meaning that he was 68 in 1961. In November 1961, all employees were asked to furnish birth certificates to the employer. It then developed that claimant had been born in *1892*, not 1893. This meant that claimant should have retired November 30, 1961, at the age of 69. However, at the request of the Columbus Coated Fabrics Company officials to the parent Borden Company, a special provision was made by Borden Company to allow claimant to work one more month, beyond the December 1, 1961 date, in order that claimant might qualify for the Borden Company increased pension benefits. Claimant was notified of this special arrangement, and did continue to work under it through December 1961.

The claimant's retirement, which occurred as of the end of the year 1961, is described by the claimant in his testimony as follows:

"Question. Your retirement though, as they indicated, was under this company retirement plan?

"Answer. They came down and told me I had to retire, that's all I know, so that's about all there was to it."

"* * *

"Question. You signed the necessary papers they had you sign then, and when they were ready you retired?

"Answer. Yes, that's all. When they tell you that you have quit, you have to quit, I guess."

Beginning January 1, 1962, the claimant became eligible to receive monthly (1) social security checks *and* (2) pension checks under the Borden Company pension plan. Not content with these two monthly payments, claimant started the machinery in motion on January 9, 1962, to get a third source of income through unemployment compensation benefit payments. This appeal is the result of that January 9, 1962 step.

These facts call into play two different schools of thought as to the true purpose of the Unemployment Compensation legislation which became effective throughout the United States in the 1930's. What was such legislation intended to do? On

the one hand, it is argued that Congress meant to provide only short-term aid to those thrown out of work through no fault of their own, and that the unemployment benefit payments were intended to make it possible for such workmen to seek a job similar to the ones they had lost before being forced onto relief rolls. On the other hand, it is contended that the true purpose of the Unemployment Compensation program was to keep the economy strong with money being pumped into it continuously where technical or economic changes (automation for example) caused dislocations in employment.

Admittedly, there are some blind spots in the wording of the statutes. Problems are continually arising which find no easy solutions in the statutes. To generalize, it might be said that there are loopholes in the law through which growing numbers of seasonal workers (students, for example), pensioners and working wives, who have no real attachment to the labor force, are getting benefits when, perhaps, such was not the intent of the legislation when it was originally enacted.

I have to assume that, when the claimant's Union representatives were collectively bargaining with the employer's representatives over the eighteen years that claimant was a member of that Union, all parties to the negotiations had in mind the fact that government afforded unemployment benefits and old age and survivors' insurance benefits, financed through assessments or "contributions" from affected parties, such benefits to start payments, either at a given age (in the event of old age benefits) or upon loss of work by persons genuinely attached to the labor market who fully expected to return to work. The Union negotiators, knowing of this, wanted *something more* for their members than what the statutes afforded their members and they got it in the way of pensions— payments to supplement old age benefit payments for those who reached retirement age.

Once the employer has voluntarily assumed the obligations attendant upon maintenance of such a pension plan to meet the specific problem of old-age-retirement by Union members, such employer should not, as I see it, be indirectly penalized by having the unemployment experience of his company materially changed and the contribution burdens increased

through the payment of unemployment benefits to retiring employees. If the retiring employee is to draw (1) old age social security payments; (2) pension payments; and (3) unemployment compensation benefits for a maximum period, even though he does not in good faith expect actually to return to the labor force (and perhaps forfeit his social security payments thereby), the employer is being held to a collective bargaining agreement which he did not, in fact, negotiate. He is forced to pay more than he expected to pay (through increased contributions for unemployment compensation based upon experience) and the Union members, conversely, receive more than was negotiated for them by their Union representatives (through the uncontemplated windfall of unemployment compensation benefits paid them after they had retired from the labor force).

From the standpoint of public policy—the greatest good for the greatest number—I am inclined to think that there should be a fostering of a system which makes it practical for men to retire at a reasonable age (65 to 70, perhaps) with reasonable security (i. e. monthly old-age-social-security payments, supplemented by Union-negotiated-pension payments from employer-maintained funds) rather than to foster a system which would give over-age workmen unemployment compensation payments *at the unanticipated expense* of employers, thus jeopardizing, to a minor degree of course, the actuarial soundness of the unemployment compensation reserve funds to the prejudice of younger men who are actually in the labor market but temporarily out of work through no fault of their own or their employers.

It is readily apparent that much of the foregoing commentary in the last several paragraphs is in the field of governmental policy, generally, with little direct application to the facts, or law, of this particular case. I deem the foregoing comments significant, however, because they give a starting point for my rulings on the technical, legal phases of this case.

The statute, as quoted above, contemplates forfeiture of benefits *only* where the separation is (1) a quitting of employment without just cause, or (2) a discharge for cause in connection with the employee's work. I must determine whether our facts fall into one or the other of these two classifications.

I hold that this claimant on the facts before me will have to be regarded as having been "discharged for cause in connection with his work." I come to this conclusion because the employee, working through his Union, gave the employer just cause years ago, when the successive, union-negotiated contracts, covering his work and the terms of the employment, substituted the pension provisions of the collectively-bargained, working contracts for the statutory right of no pension but unemployment compensation benefits after retirement.

In arriving at this conclusion, I am supported by decisions of courts *outside* Ohio which hold that, where, as here, an employee's retirement is compulsory by the terms of his employment agreement, the employee is not entitled to unemployment compensation. It was so held in *Lamont* v. *Director* (Mass. 1958) 149 N. E. 2d 372; in *Bergseth* v. *Zinmaster Baking Co.* (1958) 252 Minn. 63, 89 N. W. 2d 172; in *Kentucky Unemployment Insurance Commission* v. *Kroehler Mfg. Co.* (Ky. 1961) 352 S. W. 2d 212; in *Kentucky Unemployment Insurance Commission* v. *Reynolds Metals Co.* (Ky. 1962) 360 S. W. 2d 746, and in *Ball Brothers Co., Inc.* v. *Review Board* (Ind. App. 1963) 189 N. E. 2d 429.

I recognize that a contrary result was reached in four other state courts, i. e., in *Campbell Soup Co.* v. *Division of Employment Security* (1953) 13 N. J. 431, 100 Atl. 2d 287; in *Warner Co.* v. *Unemployment Compensation Board of Review* (1959) 396 Pa. 545, 153 Atl. 2d 906; in *Employment Security Commission* v. *Magma Copper Co.* (1961) 90 Ariz. 104, 366 Pac. 2d 84; and in *Reynolds Metals Co.* v. *Thorne* (Ala. 1961) 133 So. 2d 709, certiorari denied (1961) 272 Ala. 709, 133 So. 2d 713.

I further recognize that Section 4141.32, Revised Code, prohibits a waiver of benefits by an employee. I hold that such statute does not have application to our facts. This claimant did not waive; on the contrary, he accepted fruits of his union's collectively-bargained contracts which were better than the unemployment compensation benefits which the law afforded him. In so doing, he gave his employer "just cause" for discharging him at the compulsory retirement age.

Comment also should be made on the suggestion made on the claimant's behalf that the employer allowed this claimant to

work during the month of December 1961 when he was 69 years of age and past the compulsory retirement age of 68. It is argued that the employer's forcing of retirement thereafter was "arbitrary" and "unilateral" so as to constitute a discharge "without just cause," thus making claimant eligible to benefits under Section 4141.29(D)(2)(a), Revised Code. I choose to reject that contention upon the ground that, in law, a party can waive rights upon such conditions as that party wishes to impose. Then, the other party to the transaction cannot compel the disregard of such conditions later. Here, the employer saw fit to waive the 68 year age retirement provision for only one month for the worthwhile reason that claimant would then qualify for a better pension. When the one-month condition of the waiver had expired, the employer's right to "discharge for cause" was reinstated. Such right's exercise had merely been in abeyance for the one month.

For the reasons given in this opinion, I find that the order appealed from was lawful, reasonable and supported by the evidence in the requisite amount. Accordingly, such order is affirmed.

*Order affirmed.*