### Lloyd D. RICHARDSON

v.

### MAINE EMPLOYMENT SECURITY COMMISSION and Director, Postal Data Center, *U. S. Post Office Department.*

Supreme Judicial Court of Maine.

May 17, 1967.

David A. Nichols, Camden, for plaintiff.

Frank A. Farrington, Milton L. Bradford, Asst. Attys. Gen., for Maine Employment Security Commission.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

MARDEN, Justice.

On appeal. Appellant was employed by the United States Post Office Department, a Federal Agency, at Camden, Maine, from July 1, 1941 to March 31, 1965 at which time his employment was terminated by reason of a "mandatory retirement" provision of the Federal Civil Service Commission, which required retirement at the end of the month during which the employee attained the age of 70 years (5 U.S.C.A. § 2255 and Commission Regulation No. 723.-25). Appellant attained the age of 70 years on March 13, 1965.

Following his mandatory retirement, Appellant was ready, willing and able to continue his employment and sought to continue his work through his Postmaster. The Postmaster disclaimed authority to grant any extension of employment. Seasonably Appellant made application to the Maine Employment Security Commission (Commission) for unemployment benefits. The Federal law then made such an applicant as the Appellant eligible for state unemployment benefits, subject, however, to the provisions of the unemployment law of the State in which he earned his wage credits. (See 42 U.S.C.A. §§ 1362–1364).[1]

---

1. Since repealed. Pub.L. 89–554, § 8(a) Sept. 6, 1966, 80 Stat. 658, 660, 661.

Following decisions, after hearing, by the Deputy Commissioner, the Commission Appeal Tribunal and the Commission, all of which denied benefits, and holding petitioner's separation as voluntary, and appeal to the Superior Court, which affirmed the finding of a voluntary quit and ruled that the statute additionally and specifically disqualified him as a retiree, the matter reaches us.

Of four points of appeal, the first two raise irrelevant questions of fact, the third a question of appellant's availability for work, which is not disputed, and the fourth the finding that appellant was disqualified for benefits, which turns upon the application of our employment security statute and frames the issue.

Appellant contends that retirement made mandatory by Civil Service regulation does not disqualify him for unemployment benefits under the Maine statute.

At the time of Mr. Richardson's mandatory retirement and application for unemployment benefits our statute 26 M.R.S.A. § 1193 in pertinent respect read as follows:

"§ 1193. *Disqualification.* An individual shall be disqualified for benefits:

"1. *Voluntarily leaves work.* For the period of unemployment subsequent to his having retired, or having left his regular employment *voluntarily without good cause attributable to such employment, * * *,* if so found by the commission, and disqualification shall continue until claimant has earned 15 times his weekly benefit amount. * * *."

The issue is encompassed by the following questions, (a) whether the words "having retired" apply to a compulsory retirement as distinguished from a retirement at the employee's volition, or (b) whether a compelled retirement is a leaving of his regular employment "voluntarily without good cause attributable to such employment."

Prior to 1961 the section of the statute, which is now § 1193, was entitled "Disqualification for Benefits" and dealt in pertinent aspect with disqualification for leaving work voluntarily without good cause attributable to such employment.

By Chapter 361 of the Public Laws of 1961, subsection I was amended to read as follows:

"I. *Voluntarily leaves work.* For the period of unemployment subsequent to his having *retired, or having* left his regular employment voluntarily without good cause attributable to such employment, * * *." (changes emphasized)

It is urged that this amendment in which the subsection is entitled "Voluntarily leaves work" and adds retirement as a cause for disqualification, manifests the intent of the legislature to make only voluntary retirement as ground for disqualification.

It is conceded that the "retirement" provision for disqualification for benefits is peculiar to the Maine statute. Disqualification for benefits by virtue of "having retired" on its face excludes the appellant from the benefit of the Act unless the title "Voluntarily leaves work" to subsection I, having been specifically added at the same time as the retirement provision by the 1961 Legislature, declares that the disqualifying retirement must be a voluntary retirement even as a "quit" without good cause attributable to the employment must be a voluntary quit.

The phrasing of the 1961 amendment, so interpreted, declares that the disqualifying retirement must be a voluntary retirement as distinguished from a retirement required by the employer. Upon this basis the voluntariness of the retirement is to be measured in the same manner as the voluntariness of leaving the work without good cause attributable to the work.

In those unemployment statutes phrased as our in this respect, the weight of authority holds, as did we in Toothaker v. Maine

Employment Security Commission et al, Me., 217 A.2d 203, [11, 12, 13] 208, 209, that the cause "attributable to" the employment must be directly attributed to the work. It is not here contended that the civil service regulation requiring appellant's retirement was a cause attributable to the work within the meaning of the statute.

The issue is to be resolved upon "voluntariness" within the meaning of our unemployment law, and is raised, of course, only in instances where the employee establishes a statutory availability for work.

Case law illustrates that mandatory retirement comes about in a number of ways; employer policy, as in Stream et al. v. Continental Machines, Inc. (1961), 261 Minn. 289, 111 N.W.2d 785 and Kentucky Unemployment Insurance Commission v. Young et al. (Ky.1965), 389 S.W.2d 451, which we label category A; or as a provision in a collective bargaining contract, as in Anson et al. v. Fisher Amusement Corporation (1958), 254 Minn. 93, 93 N.W.2d 815; Campbell Soup Co. v. Board of Review, Division of Employment Security, Department of Labor & Industry et al. (1953), 13 N.J. 431, 100 A.2d 287; Lamont et al. v. Director of the Division of Employment Security et al. (1958), 337 Mass. 328, 149 N. E.2d 372; and Bergseth et al. v. Zinsmaster Baking Company (Minn.1958), 89 N.W. 2d 172, which we label category B. Retirement required by the second category sometimes includes additional elements such as extension of employment upon reaching re-

tirement age, at the option of the employee, subject to approval of the collective bargaining agent, as in Ferrelli v. Leach, Admr. (1962), Ohio Com.Pl., 186 N.E.2d 868 which we label category B1; the employer, as in Warner Co. v. Unemployment Compensation Bd. of Review (1959), 396 Pa. 545, 153 A.2d 906; Employment Security Commission v. Magma Copper Company (1961), 90 Ariz. 104, 366 P.2d 84; and Kentucky Unemployment Insurance Commission et al. v. Kroehler Manufacturing Company (Ky. 1961), 352 S.W.2d 212, which we label category B2; or both, as in Krauss v. A. & M. Karagheusian, Inc. (1953), 13 N.J. 447, 100 A.2d 277; and Reynolds Metals Company v. Thorne (1961), 41 Ala.App. 331, 133 So.2d 709, rehearing denied, 272 Ala. 709, 133 So.2d 713, which we label category B3. The present case falls within category A, but the question of voluntariness is the same in both categories A and B.

As to the employee's entitlement to unemployment benefits under such circumstances, the few cases which have reached courts of last resort are divided.[2]

In those jurisdictions awarding unemployment benefits, the rationale is that mandatory retirement is by its nature a forced retirement, that it is not an act of volition by the employee and if he is otherwise qualified under the terms of the reference statute, he is entitled to unemployment compensation. See *Campbell*, (N.J.), *Warner* (Pa.), *Magma Copper* (Ariz.), and *Reynolds* (Ala.), all supra.

---

2. The following cases, are reported from intermediate courts in Ohio and Indiana, which, so far as we have discovered, are the latest views of those states upon the subject.

Category B: Ball Brothers Company, Inc. v. Review Board of the Indiana Employment Security Division (1963), 135 Ind.App. 68, 189 N.E.2d 429, no compensation. Fahl et al. v. Board of Review, Bureau of Unemployment Compensation (June 1965), 2 Ohio App.2d 286, 207 N. E.2d 774, remanded to the Board of Review due to insufficiency of the record. Marcum v. Ohio Match Co. et al. (Oct. 1965), 4 Ohio App.2d 95, 212 N.E.2d 425,

discharged for cause. No compensation. Jenkins v. Review Board of Indiana Employment Security Division (1965), Ind. App., 211 N.E.2d 42, "disapproving" *Ball Brothers*, supra, compensation allowed.

Category B2: Leach, Admr. et al. v. Columbus Coated Fabrics Co. (Aug. 1964), 1 Ohio Misc. 41, 205 N.E.2d 608, (falls also into Category B1) discharged for cause. No compensation. Ferrelli v. Leach, Admr. et al., and companion cases (1962), Ohio Com.Pl., 186 N.E.2d 868, compensation allowed in one, denied in two, due to employees failure to claim work.

Cases reaching an opposite result do so by holding that the employee who accepts and retains employment aware of his employer's policy to retire him when he has reached a stated age, in effect accepts employment for a fixed term. He voluntarily accepts the retirement provisions as a feature of the employment relation, he agrees to quit work when he attains the prescribed age, and that within the terms of the act, his retirement is voluntary, and unemployment compensation is denied. See *Lamont* (Mass.),[3] *Bergseth* (Minn.) and *Kroehler* (Ky.), all supra.

■ Our acceptance and adoption of the latter view is governed by the concept of unemployment compensation as expressed in our statute. The declared policy of our statute is to alleviate "economic insecurity" due to unemployment, 26 M.R.S.A. § 1042. The provisions for unemployment compensation is a form of insurance, *Toothaker*, supra [3–5], 217 A.2d 206, and implicitly insurance protects against fortuitous circumstances, not those designedly brought about by the insured. "Disqualification for Unemployment Insurance" 8 Vanderbilt Law Review 307, 308. The statutory protection is against unemployment as a "hazard of our economic life," 26 M.R.S.A. § 1042.

The fund created by the unemployment compensation law and the rate of contribution by the employing unit was determined actuarily by the known hazard of unemployment occurring by chance. While in the instant case any benefits to which the appellant is entitled would be charged *not against an employer* for experience rating purposes under 26 M.R.S.A. §§ 1221, 1223, as his claim for benefits apply to a federal employee's program and no state employment wage credits are involved, the impact of the award of unemployment compensation to retirees will impose a burden upon the unemployment fund not contemplated within the recognized hazard of fortuitous unemployment,—and to its prejudice.

"The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases." *Krauss*, supra [2, 3] 100 A.2d 281.

■ The concept of social security is twofold, first, the realization that the attainment of a stated age finds the average person as having reached a point where his productive capacity decreases the interest of an employer in his services, and second, by the social security benefits enabling such person to reduce or cease his activities in the labor market thus creating vacancies in the market for younger persons. Certainly this thinking is involved in collective bargaining agreements determining the employee's retirement.

■ A provision for retirement of a person upon attaining the age of 70 years realistically removes him from the labor market under our statute, and if by virtue of good health and a desire to continue work, such person genuinely elects again to enter the labor market and qualify as such, he may do so by re-entering such market and, as of the time this claim arose, earning fifteen times his weekly benefit amount.[4]

Certain cases cited above (*Campbell, Warner,* and *Magma Copper*) involve a provision in the reference statutes nullifying any agreement by an employee to waive his right to benefits under the unemployment compensation law, and hold that such statutory provision prevents the acceptance of the mandatory retirement as part of the employment contract from operating to

---

3. Chapter 93, Acts and Resolves of Mass. 1961, removes disqualification by reason of retirement.

4. By Chapter 381 § 13 P.L.1965, the period of disqualification continues "until complainant has earned 8 times his weekly benefit amount."

deprive the employee of unemployment benefits. A similar anti-waiver statute existed in *Bergseth, Kroehler,* and *Lamont, supra,*[5] but it was not considered significant in the conclusion of the court that the retiree had voluntarily quit and was not entitled to unemployment compensation. The point had been earlier decided in Jackson v. Minneapolis-Honeywell Regulator Co. (1951), 234 Minn. 52, 47 N.W.2d 449, [4] 454, where the court said, as applied to a comparable point:

"There is an important distinction between an agreement for a leave or vacation shutdown which gives rise to no unemployment compensation benefits, and a collusive agreement that unemployment compensation benefits be waived."

Our 26 M.R.S.A. § 1044 similarly provides that:

"Any agreement by an individual to waive, release or commute his rights to benefits or any other rights under this chapter shall be void."

Paraphrasing *Jackson* it may properly be said that the same distinction exists between an agreement to leave the labor market at a prescribed time, giving rise to no unemployment benefits, and a collusive agreement that benefits to which he is entitled be waived.

For a right to be waived, released or commuted the right must first exist, though inchoately. There is no right in the mandatory retiree under the facts before us to unemployment benefits upon which this statute can operate.

■ The tribunals below and this court can but be aware of the entitlement by a civil service retiree to benefits under the civil service retirement program, 5 U.S.C.A. § 2251 et seq. The receipt of such benefits does not per se disqualify the retiree from benefits under our unemployment compensation act, Dubois et al v. Maine Employment Security Commission, 150 Me. 494, 114 A.2d 359, but such benefits do mitigate or obviate the economic insecurity which our unemployment compensation act was designed to alleviate.

That this is an element within the contemplation of an Act is expressly recorded in § 1193, subd. 5 which provides that receipt by the employee from another State or the United States of benefits due to unemployment, or retirement pay or pension from specified sources is pro tanto a disqualifying factor,—which section has not here been put in issue.

■ It was held in *Toothaker,* supra [3–5] 217 A.2d 206, that our unemployment insurance could not be considered a substitute for health insurance and we here say, as did the learned Justice in the Superior Court, that unemployment insurance cannot be considered a form of pension.[6]

Appeal dismissed.

DUFRESNE, J., concurs in result.

---

5. Implied in the opinion, but in fact Section 35, Chapter 151–A Annotated Laws of Massachusetts then in effect.

6. It is to be noted that § 13 of Chapter 381 P.L.1965 amended 26 M.R.S.A. § 1193, subsection I by disqualifying an employee for the duration of his unemployment period "subsequent to his having retired; *or having been retired from his regular employment as the result of a recognized employer policy program,* (emphasis added) if so found by the commission, * * *." This amendment having been added to the subsection still labelled "Voluntarily leaves work" dilutes considerably the contention here that the words "having retired" in the statute applicable to this case must mean retirement at the volition of the employee. The 1965 amendment specifically disqualifies a mandatory retiree in spite of this section title.