TEXAS EMPLOYMENT COMMISSION v. FRANCES M. HANSEN ET AL.

No. A-7788. Decided February 1, 1961.
(342 S.W. 2d Series 551)

*Will Wilson*, Attorney General, *C. K. Richards*, Assistant Attorney General, for petitioner.

*Mullinax, Wells, Morris & Mauzy, Charles J. Morris*, and *Albert Levy*, of Dallas, for respondents.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

This is a companion case to Texas Employment Commission v. Huey, [ante page 500] decided this day. Like the Huey case,

the question is whether people who are without work and without compensation during a plant shutdown, during which employees with seniority draw vacation benefits, are disqualified from drawing unemployment compensation benefits because of a union contract. The trial court held that they were disqualified. The Court of Civil Appeals reversed that decision and rendered judgment for the claimants. 332 S.W. 2d 372. We here affirm the judgment of the Court of Civil Apeals.

In many respects, the facts here are like those in the Huey case. The employer here also manufacturing clothing. The several companies here involved have common ownership and pursued the same policies. There are plants in Dallas, Waxahachie, Greenville, McKinney, and Corsicana. Labor relations for all of them are handled from a common office in Dallas. All of the companies except that in Corsicana had entered into similar labor contracts which the Employment Commission and the trial court held to be disqualifying for the laid-off employees. There was no labor agreement, however, at the Corsicana plant. Although the layoff and vacation programs were the same at the Corsicana plant and at the other plants, the Employment Commission has held claimants from the Corsicano plant to be entitled to unemployment benefits. So, as in the Huey case, it is the union contract alone which caused the Employment Commission to deny benefits to those who were laid off without pay during the vacation or shutdown period.

As in the Huey case, the facts were stipulated. Because many of the stipulations are the same, having been drawn by the same attorneys who represented the contesting sides respectively, they need not be repeated here.

None of the claimants here was employed by the month or by the year. None was guaranteed any particular number of hours of employment per week or per month. They were employed on an hourly basis. The plants at Dallas and Waxahachie were closed between July 23 and August 5, 1956. The plants at Greenville and McKinney were closed between August 6 and 19. During those periods, the claimants performed no work and received no pay because of the closing of the plants in the exercise by the management of its option under the union contract with the management set out below. Similarly, the Corsicana plant was closed between July 21 and August 5, 1956.

The portion of the union contract dealing with vacations is:

ARTICLLE IV. VACATIONS. Vacation periods shall be determined by the Company. As a rule such periods shall be between the latter part of June and the first day of September of each year. It shall also be the Company's sole option to determine the manner in which vacations may be given, i.e., whether to close down the entire factory, to give one or more employees their vacation period at one time or to close down one or more units at a time.

ELIGIBILITY FOR VACATIONS. 1. The first eight weeks of employment shall be considered a training period and shall not be counted for vacation pay eligibility.

2. Employees governed by the eight weeks training period shall be:

a. New employees.

b. Employees who resign or who are terminated for any reason and later return to work.

3. All employees who have completed the eight weeks training period, who have not been removed from the payroll at the beginning of a vacation period, including employees on temporary sick leave and employees on maternity leave who have worked any part of the current twelve months, shall be eligible for vacation pay.

4. Vacation pay shall be figured as follows:

a. 2% of employees pay for the current twelve months period be paid to all employees having been continuously employed for either one, two or three years.

b. 4% of employees pay for the current twelve months period to be paid to all employees having been continuously employed for four years or more.

c. New employees who have not completed the eight weeks training period shall not be eligible for vacation pay; but after completion of the eight weeks training period vacation pay shall be figured from the beginning of employment to next succeeding May 25th of the current year."

It was stipulated that in each of the plants, some of the claimants (plaintiffs below) received vacation pay for one week while

others received no vacation pay "for the reason that such claimants had not qualified to receive such pay under the terms and provisions of Article IV." Each claimant who was entitled to receive pay for one week's vacation received no pay for the second week or any unemployment benefits. Those with no seniority received no pay during the period.

Stipulation 10 reads:

"Beginning with the year 1947 in accordance with the practice of the defendant employer companies in exercise of the option under Article IV of the Contracts hereinbefore referred to and prior contracts entered into between the employer companies and the union, up to and including the year 1956, the sewing rooms of the defendant employers plants at their various locations have been closed for a two weeks' period, during each of which periods no productive work was done or was available to any production employee in the sewing rooms or each of said plants of defendant employer companies."

Stipulations 12 through 15 were:

"12. It is agreed that there was no contract between defendant The Corsicana Company and the Amalgamated Clothing Workers of America, or with its affiliate or with any other labor union at the time of the two weeks vacation period from July 21 to August 5, 1956, at the plant of defendant The Corsicana Company at Corsicana, Texas. Such vacation period was designed by the Corsicana Company and no work was available to the employees of the Corsicana Company in the sewing room of its plant during such vacation period. It is further agreed that the vacation procedure and qualifications used by The Corsicana Company are identical with those used by the Dallas Pant Company, the Waxahachie Garment Company, the Greenville Pant Company and the McKinney Pant Company. It is further agreed that all of the employees of the Corsicana Company who filed claims for unemployment compensation benefits for the two weeks' vacation period received unemployment compensation benefits for the entire two weeks' period except where such employees were entitled to one week's vacation pay in which cases said employees received unmployment compensation benefits for the balance of said period * * *."

"13. At no time did any of the plaintiffs request or authorize the union to agree that they or any of them or any employee similarly situated was to receive a vacation without pay whether for

a period of one week, two weeks or any other period of time, and the union did not at any time request or agree with the defendant company or companies that any such employees were to be given unpaid vacations for any period of time, except to the extent, if any, that they were bound by the contract between the union and the employer of which all employees had notice.

"14. Neither management nor the union objected to employees who received no vacation pay seeking and obtaining other employment during the shutdown when other employees were on vacation and receiving vacation pay, or employees who received only one week's vacation seeking and obtaining other employment for the remaining time they were out of work during the aforesaid period when the plant operations were shut down or curtailed.

"15. Each of the claimants herein during all of the period of time she was off work during the respective periods, excepting the first week of such period that some of said employees were on vacation and receiving vacation pay * * * was able to work and was available for work at her defendant company or elsewhere."

The facts of this case are close enough to those in the Huey decision to be controlled by it. In the union agreement, management reserved the right to give one or more employees their vacations at one time or to close down one or more units. It also reserved the right to close down the entire plant. This option is held to be controlling by the Arkansas court, but we do not agree that that fact alone should be controlling.[1]

There is nothing to indicate that the shutdown occurred by union demand or was for the benefit of employees. Neither the union nor the employer objected to those let off without pay seeking and obtaining other employment during the shutdown. Each of them was ready, able and willing to work at the plants or elsewhere. Each applied to the Commission for employment, but no work was available. On the other hand, management shut down its Corsicana plant where no union contract existed. It conducted the same type of operation in Corsicana that it conducted at its other plants. The inference is clear that it closed the Corsicana plant for its own convenience or its own reasons and without

---

1.—In Thornbrough v. Schlenker (1958), 311 S.W. 2d 753, that court allowed claimants to recover unemployment compensation because the union contract did not give the employer the option to bring about a plant-wide shutdown period. The Arkansas statute allowed claimants benefits who were "unemployed through no fault of their own," and disqualified those who were "voluntarily unemployed." It did not have the Texas disqualification that the the claimant must have left his work "voluntarily without good cause connected with his work."

regard to any union demand or contract. There is nothing in the evidence to indicate that any peculiar facts or circumstances existed at its Corsicana plant which would cause management to treat that plant differently from its other plants. The Employment Commission concedes that employees laid off under otherwise identical circumstances at the Corsicana plant were entitled to unemployment benefits and that such benefits were paid.

It is stipulated that at no time did the plaintiffs request or authorize the union to agree that they should be given a vacation without pay and that the union did not request or agree to any such unpaid vacations unless the contract above set out constitutes such an agreement. We do not believe that the contract should be so construed. The agreement is not one of voluntary unemployment for those without seniority during a layoff period, but deals with the treatment of employees with seniority during the shutdown. Under the foregoing and under the authorities discussed in the Huey opinion, our conclusion is that the claimants did not leave their work "voluntarily without good cause connected with their work."

As in the Huey case, it is unnecessary for us to decide whether the union agreement constituted an agreement to waive, release, or commute any benefit or other right given people under the Unemployment Compensation Act, which agreements are condemned by the Act as invalid. Article 5221b-13(a) V.A.C.S. And, as in Huey, it is unnecessary for us to decide whether the union agreement formed a disqualification to nonunion employees who were similarly laid off during the shutdown period.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 1, 1961.

ASSOCIATE JUSTICE STEAKLEY not sitting.