## CARL A. STREAM AND OTHERS v. CONTINENTAL MACHINES, INC.

111 N. W. (2d) 785.

November 24, 1961—No. 38,412.

---

*Clarence O. Holten* and *James S. Eriksson,* for relator.

*Walter F. Mondale,* Attorney General, and *Joseph A. Coduti,* Assistant Attorney General, for respondent commissioner.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the commissioner of the Department of Employment Security.

The five claimants here applied for unemployment compensation following their compulsory retirement at age 65 under a plan adopted by relator (the employer) in 1954. Claims deputies determined the claimants were entitled to benefits and that any benefits paid would be charged to employer's experience-rating account. These decisions were affirmed by an appeal tribunal of the department and by the commissioner.

The claimants were hired by the employer for continuous employment on the following dates: Madsen—November 27, 1937; Masica—October 5, 1940; Bailey—December 16, 1940; Stream—April 30, 1951; and Mesenbrink—January 28, 1957. All were continuously employed from such dates until September 2, 1960. The compulsory retirement policy of employer provided that all employees retire on September 1 following their 65th birthday.

The employees are not represented by a union, and there is no claim that the compulsory retirement policy was adopted as the result of negotiations between employer and any representative of the employees. Rather, the policy was simply announced to the employees on June 1, 1954, by employer's mailing a booklet entitled "Your Retirement" to each of them.[1]

---

[1] Employer had established a profit-sharing trust for its employees in 1943, to which it alone contributes. Moneys contributed to the trust fund by employer vest immediately in the employees, but employer can terminate the trust. The booklet "Your Retirement" explained the retirement benefits which could be expected under the profit-sharing plan as follows:

"Now that we have passed the Tenth Anniversary [of the profit-sharing plan], it is essential that we establish a normal retirement age in order to provide all of the benefits for which the plan was intended.

None of the claimants voiced any objection to the management concerning this policy. In fact, each one testified at the hearing before the appeal tribunal that by continuing or accepting employment with employer he had accepted the plan.

Disqualification from unemployment benefits is governed by Minn. St. 268.09. So far as it is here material, that section provides:

"An individual shall be disqualified for benefits:

"(1) If such individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer * * *."

The appeal tribunal held that each of the claimants herein was involuntarily separated from his employment and that therefore the claimants were not disqualified for benefits and that the benefits were to be charged to the employer's experience-rating account. The representative of the employers on the tribunal dissented, stating that here there was a "tacit agreement to accept the retirement policy of the employer, by continuing to work knowing that such a policy was in effect."

On appeal to the commissioner of the Department of Employment Security, the decision of the tribunal was affirmed.

In reviewing the decisions of administrative bodies, this court is governed by the following rule:

"* * * [The supreme court] can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it." Bucko v. J. F. Quest Foundry Co. 229 Minn. 131, 136, 38 N. W. (2d) 223, 227.

---

"Government legislation, such as the Social Security Act, set the time for receiving its benefits at age 65, and, as you probably know, most plans in private industry use the same age. It has been decided, therefore, that at the age 65, employees will be retired under Continental's Profit Sharing Trust. Payments of benefits shall commence immediately upon such mandatory retirement age. However, in order to obtain the maximum benefits possible under the plan, an employee will be permitted to work to September 1st of the year in which he reaches the age of 65."

The sole question before us is the claim of employer that the finding of the appeals tribunal that each of the claimants was "involuntarily separated" is not sustained by the evidence and is based upon an "erroneous theory of the law."

The law in this jurisdiction has been recently announced in two well-considered cases. In the first of these, Bergseth v. Zinsmaster Baking Co. 252 Minn. 63, 89 N. W. (2d) 172, the claimants were disqualified from receiving benefits because as members of a union they were bound by the provisions of an agreement between the union and the employer providing for a compulsory retirement plan. The court reasoned that the agreement negotiated by the union was their agreement and that separation at 65 was therefore voluntary.

In Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. (2d) 815, the claimant was not a union member, but accepted employment with full knowledge of the seniority rules of a collective-bargaining agreement. When claimant was forced to resign pursuant to the rules, it was held that his separation was voluntary and without good cause attributable to the employer. We concluded (254 Minn. 101, 93 N. W [2d] 821):

"* * * when a nonmember of a union local knowingly accepts—or continues—employment with an employer who is subject to the seniority provisions of a collective-bargaining agreement with the union local, he thereby ratifies and accepts the terms of the contract, * * *."

When an employee can fairly be said to have accepted, either personally or through a bargaining agent, an employment contract providing for compulsory retirement at a certain age, his separation at that age will be deemed voluntary for purposes of § 268.09, and he will be disqualified for benefits.

Claimants Madsen, Masica, Bailey, and Stream all entered the employ of relator prior to the adoption of its compulsory retirement policy. Mesenbrink became employed subsequent to the adoption of the plan. All were continuously employed from the dates they were originally hired until September 2, 1960, at which time their employments were terminated in accordance with the compulsory retirement plan.

It is our opinion that claimants Madsen, Masica, Bailey, and Stream,

by continuing their employments for several years after the adoption of the retirement policy in 1954, with knowledge of such policy, at least impliedly agreed to accept the policy. Each of them testified that he accepted the employment policy of the company when it was presented to him. As to Mesenbrink, he did not commence his employment until about 3 years after the policy was adopted, so it is clear that he accepted his position with the knowledge that he would have to retire at age 65.

It is fundamental that the relationship of master and servant rests upon contract, express or implied; that the contract may be implied from the acts of the parties and circumstances; and that it may be partly expressed in words and partly implied from acts and circumstances. 11 Dunnell, Dig. (3 ed.) §§ 5800 and 5800a; Dybvig v. Minneapolis Sanatorium, 128 Minn. 292, 150 N. W. 905.

Where an employee accepts or retains employment with knowledge of new or changed terms or conditions, a contract results embodying the new or changed terms or conditions. Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; cf. Balderacchi v. Ruth, 36 Tenn. App. 421, 256 S. W. (2d) 390.

Reversed.