**Stella M. REDD et vir, Appellants,**

**v.**

**TEXAS EMPLOYMENT COMMISSION et al., Appellees.**

**No. 375.**

Court of Civil Appeals of Texas.

Corpus Christi.

May 31, 1968.

Robert C. Eckhardt, Houston, Travis Peeler, Corpus Christi, for appellants.

Lewright Dyer & Redford, Walter Dunham, Jr., Corpus Christi, Steve Hollahan, Asst. Atty. Gen., Austin, Jon Dee Lawrence, Houston, for appellees.

## OPINION

GREEN, Chief Justice.

The parties in this lawsuit are Stella M. Redd, a former employee of Southwestern Bell Telephone Company, who will be referred to as Claimant or Appellant, Texas Employment Commission, referred to herein as the Commission, and Southwestern Bell Telephone Company, herein styled Employer.

Claimant was originally employed by Employer in 1916, worked for a short while and left, and was thereafter re-employed on April 14, 1943. She continued to work as a telephone operator for Employer until her retirement on June 1, 1965, at the age of 65 years (her birth date was May 23, 1900) under Employer's compulsory retirement rule which had been in effect since July 1, 1930, reading as follows:

"RESOLVED: That on July 1, 1930, every officer or other employee of this Company who at that time is 65 years of age or over shall be retired from active service and thereafter every officer or other employee becoming 65 years of age shall be retired at the end of the month in which he reached such age, provided, however, that by action of this Board the operation of this resolution may be delayed from year to year with respect to any employee who is performing such services for the Company that his continuation as an active employee is deemed for the best interest of the telephone service."

As a telephone operator Claimant had been at all times a member of the Communications Workers of America, which union was the recognized collective bargaining agent for the employees of the telephone company. Since her compulsory retirement on June 1, 1965, Claimant has received from Employer a pension based on approximately 26 years of service amounting to $74.44 per month during the remainder of her life. The pension plan provides that the annual pension allowance for each

employee retired with a pension at the age of 65 years shall be 1% of her average annual pay during the five years next preceding retirement for each year of her term of employment. The amount may be raised in the future but not reduced, in accordance with a provision in the collective bargaining agreement between the union and Employer effective at all times here pertinent reading as follows:

"During the term of this Agreement, no change may be made without the consent of the Union in the existing 'Plan for Employees' Pensions, disability Benefits and Death Benefits' which would reduce or diminish the benefits or privileges provided thereunder. Any claim that such benefits or privileges have been so diminished or reduced may be presented as a grievance and if not resolved by the parties under their grievance machinery may be submitted to arbitration pursuant to the provisions of Article V hereof; but in any such case any decision or action of the Company shall be controlling unless shown to have been discriminatory or in bad faith and only the question of bad faith or discrimination shall be subject to the grievance procedure or arbitration."

The "Plan for Employees' Pensions, Disability Benefits and Death Benefits" was voluntarily inaugurated by Employer and its predecessor, and is a non-contributory plan as to the employees. Appellant's last day of work was April 30, 1965. During the month of May she took her accrued vacation time. About May 22 she notified Employer that it was not her desire to retire, but she received no reply to her letter.

On June 2, 1965, Claimant filed a claim for unemployment benefits with the Commission. On June 24, 1965, her claim was denied by the Commission's representative, who found that she was *disqualified* for benefits because, as he reported, "You left your last work to retire under a company pension plan upon reaching retirement age. A separation from work under these circumstances is considered a voluntary resignation without good cause connected with the work;" and that such disqualification would continue for six weeks beginning June 2, 1965, and that there would be no charge back to the account of Employer as the result of her claim.

Appellant appealed, through the recognized procedures, to the Appeal Tribunal of the Commission, which after a hearing with evidence affirmed the initial determination of the Commission representative, adding thereto its conclusion that appellant was *ineligible* to receive benefits under the law because she had failed to make an active, diligent and independent search for work and that such ineligibility would continue until such time as she presents evidence to establish her availability for work. Appellant appealed from this decision to the full Commission which, after a hearing, adopted the findings of fact and conclusions of law of the Tribunal, and affirmed its decision in all respects. Appellant requested a rehearing to submit further evidence and at such rehearing testified that she had applied for work at four establishments, seeking PBX work, sales work, or any other employment for which she might be suited, but without success. After this hearing, the Commission reaffirmed its original decision.

Appellant next timely filed her appeal of the Commission's decision to the district court. The case was tried before the court without a jury, at which trial stipulations of facts and the complete transcript of all testimony given at the various hearings were placed in evidence, and additional testimony was heard. The court in a general judgment found that the findings and decision of the Commission were supported by substantial evidence, and sustained the Commission's order. This appeal followed.

Appellant's first and second points of error read as follows:

## I

"There is no substantial evidence upon the record as a whole that Appellant voluntarily left her employment; but, on the contrary, the clear and convincing evidence is that she was dismissed from her employment under a Company policy which was invoked to retire her against her will.

## II

"The Commission's determination, sustained by the trial court, that Appellant left her employment voluntarily without good cause connected with her work, is as a matter of law erroneous."

To these points, appellees reply by their first counterpoint as follows:

## I

"The findings and decision of the Texas Employment Commission, affirmed by the District Court, that Claimant voluntarily left her work to retire pursuant to a pension plan without good cause connected with her work, are supported by substantial evidence in the record and in accordance with the law."

Generally speaking, all unemployment compensation laws, including the Texas Act, require that a claimant meet a two-fold test before the receipt of benefits can be effected. The claimant must be found to be *eligible*. Art. 5221b–2.* This requirement will be considered later under appellant's 4th and 5th points. The next inquiry is whether the claimant is for any reason *disqualified* to receive benefits, and the appropriate period of disqualification.

In this connection, we quote from the applicable statute as follows:

"Art. 5221b–3.   Disqualification for benefits

An individual shall be disqualified for benefits:  (a) If the Commission finds that he has left his last work voluntarily without good cause connected with his work.   Such disqualification shall be for not less than one (1) nor more than twenty-six (26) benefit periods following the filing of a valid claim, as determined by the Commission according to the circumstances in each case. * * *"

Sub-paragraphs (b) to (g) are not quoted, since they are not applicable to our factual situation.

It appears from all of the evidence in the record that appellant was well informed during practically the entire period of her employment after 1943 of Employer's retirement rule and of its pension plan. While the retirement rule gave Employer's board of directors the option of delaying the retirement of "an employee who is performing such services for the Company that his continuation as an active employee is deemed for the best interest of the telephone service," there was no evidence that appellant comes within such classification. The evidence before the Commission and the trial court clearly disclosed that appellant during her years of employment understood that she would be retired at the age of 65 years and that she would draw a pension from Employer under the latter's pension plan. The evidence shows without dispute that she was ready, willing and able to continue in her employment had the company permitted her to do so.

The question of law presented by appellant's first two points of error and appellees' counter-point is whether a worker who is retired on a pension at age 65 as required by Employer's compulsory retire-

* All references to statutes are to Vernon's Annotated Texas Civil Statutes, unless otherwise indicated.

ment rule and pension plan so that she is out of employment has left work voluntarily and without good cause connected with her work under the terms of Art. 5221b–3. Additional facts to be considered are that the employee knew of the pension plan and retirement rule during the years of her employment and her bargaining agent had on her and the other union members' behalf entered into the agreement in evidence concerning the pension plan.

The parties agree that this is a case of first impression in Texas. However, there are a number of out of state cases which have passed on the question or one similar in principle, and there appears to be a definite difference of opinion on the answer.

The leading cases in support of the position taken by the Commission and the trial court are Bergseth v. Zinsmaster Baking Company, 1958, 252 Minn. 63, 89 N.W.2d 172, and Stream v. Continental Machines, Inc., 1961, 261 Minn. 289, 111 N.W.2d 785. In *Bergseth*, the Minnesota court held that an employee compelled to retire at age 65 pursuant to a collective bargaining agreement discontinues his employment "voluntarily and without good cause attributable to the employer" and is therefore disqualified from receiving benefits for a limited period. The Court, inter alia, states:

" * * * By and large, if the contract contains reasonable provisions encompassing appropriate subjects for collective bargaining and is properly negotiated by the authorized agent and properly ratified by the union membership, it will be deemed to be the voluntary act of each individual member of the union, including any dissenters. * * * (At p. 174)

" * * * Unemployment compensation is designed as a cushion against the vagaries of sporadic losses of work for employees who are genuinely attached to the labor market and who fully expect to return. Retirement benefits, on the other hand, look to a withdrawal from the labor market and more nearly approximate a reward for past services. (At p. 177)

"Section 268.03 declares it to be the public policy of this state to prevent the spread and lighten the burdens of involuntary unemployment 'by encouraging employers to provide more stable employment' and to set aside reserves 'to be used for the benefit of persons unemployed through no fault of their own.' The language clearly indicates an intention to protect employees from the extreme fluctuations of business conditions, and we would go further than the legislature intended were we to extend it to cover persons who are merely retiring from the labor market." (At p. 177)

The *Bergseth* case involved a contract between the union and employer. In *Stream,* supra, the same court dealt with a situation where employees not represented by unions also faced a sixty-five year retirement provision in their employment contracts. The Court there held:

"When an employee can fairly be said to have accepted, either personally or through a bargaining agent, an employment contract providing for compulsory retirement at a certain age, his separation at that age will be deemed voluntary for purposes of § 268.09, and he will be disqualified for benefits." (Page 788)

See also, as supporting the conclusion of Commission and the trial court, Lamont v. Director of Division of Employment Security, Supreme Judicial Ct., 1958, 337 Mass. 328, 149 N.E.2d 372; Marcum v. Ohio Match Co., 1965, 4 Ohio App.2d 95, 212 N.E.2d 425; Ivy v. Dudley, Admr., 1966, 6 Ohio 2d 261, 217 N.E.2d 875; Kentucky Unemployment Insurance Commission v. Reynolds Metals Company, Ct. of App.Ky.1962, 360 S.W.2d 746.

There is quite a line of cases holding to the contrary of the decisions cited above. The leading authority appears to be Campbell Soup Co. v. Board of Review, etc., 1953, 13 N.J. 431, 100 A.2d 287, opinion written by Justice Brennan, later of the U. S. Supreme Court. That case arose from a number of claims filed by former em-

ployees of Campbell Soup Co. who were retired on pension by the company as each reached the age of 65 years. Retirement was made compulsory by the terms of a collective bargaining agreement between the union and the employer. The primary issue was whether a worker who has retired on pension at age of 65 as required by the employment agreement left work voluntarily without good cause so as to be disqualified for unemployment compensation under a statute very similar to Texas Art. 5221b–3 quoted above. The Court, in holding the leaving to be involuntary in the statutory sense, said, inter alia:

" * * * The claimants here did not choose of their own volition to leave the employ of Campbell Soup Company when they were separated. They left because they had no alternative but to submit to the employer's retirement policy, however that policy as presently constituted was originated. Their leaving in compliance with the policy was therefore involuntary for the purposes of the statute."

* * * * * *

"Nor is the result different because the termination agreement also provides a pension for the worker. The statutory scheme for compensating unemployed workers for wage losses makes no provision for an inquiry as to individual financial need. * * * "

Other cases supporting the decision in Campbell Soup Co., though each is decided on its own factual situation, are Warner Co. v. Unemployment Compensation Bd. of Review, 1959, 396 Pa. 545, 153 A.2d 906; Reynolds Metals Company v. Thorne, Adm'x., 1961, 41 Ala.App. 331, 133 So. 2d 709; Employment Security Commission of Arizona v. Magma Copper Company, 90 Ariz. 104, 366 P.2d 84; St. Joe Paper Company v. Gautreaux, Dist.Ct.App.Fla. 1965, 180 So.2d 668; Jenkins v. Review Board of Indiana Emp. Sec. Div., Appellate Ct. of Ind. In Banc, 1965, 211 N.E.2d 42, overruling Ball Brothers Co. v. Review Bd.

of Ind. Emp. Sec. Div., 135 Ind.App. 68, 189 N.E.2d 429. The Magma Copper Co. opinion cites the following law articles as supporting the results reached in the cases cited in this paragraph: 64 Dick L.Rev. 71 (1959); 59 Colum.L.Rev. 209 (1959); 39 B.U.L.Rev. 124 (1959); 4 U.C.L.A.L. Rev. 438 (1957); 53 Mich.L.Rev. 849 (1955); 67 Harv.L.Rev. 1437 (1954); 28 N.Y.U.L.Rev. 1332 (1953); Contra, 44 Va. L.Rev. 1343 (1958).

We agree with the court in the Magma Copper case, supra, that regardless of the minor factual differences, the decisions in the two divergent lines of authorities cannot be reconciled. See also St. Joe Paper Company v. Gautreaux, supra. We believe that the better view and the one that is more in line with the holdings of Texas courts in unemployment cases is that expressed in the Pennsylvania, Alabama, Arizona, Florida and Indiana cases cited above.

In the leading case on construction of the Texas Unemployment Act, Texas Employment Commission v. Huey, 161 Tex. 500, 342 S.W.2d 544, the court had before it a factual situation somewhat different from that in our case, but we feel that certain comments in the opinion are pertinent. There the Commission and the trial court had denied employees the benefits of the Act because they had agreed, through their bargaining agent, the union, to a certain vacation period without pay which coincided with the employer's shutting down the plant. The employees had not been employed long enough to be entitled to a vacation with pay and so, under the contract of employment, the company gave them a vacation without pay while the plant was shut down. The Supreme Court said the case was one of statutory construction, the question being, were applicants qualified for unemployment benefits, or were they disqualified because of said agreements in the union contract. The Court called attention to the divergence of views of the out of state authorities, citing cases pro and con, and in the course of its

opinion quoted with approval from 30 A. L.R.2d 367, as follows:

"On this question the courts have been divided, some by a process of legalistic hairsplitting concluding that such workers are voluntarily unemployed and therefore not eligible for unemployment compensation, and others taking the more realistic view that such employees are out of work through no 'fault of their own and therefore are entitled to benefits."

Justice Greenhill, in speaking of the Texas Unemployment Act, says:

"The Act, in the general language of the preamble, says that it is to the public good that the unemployment benefit funds be set aside 'to be used for the benefit of persons unemployed through no fault of their own.' The Act says, 'An individual shall be deemed "totally unemployed" in any benefit period during which he performs no services and with respect to which no wages are payable to him.' * * *"

He puts the question:

"The question recurs: are Clara Huey and others similarly situated disqualified by virtue of the above provisions of the contract between the union and Nardis? Did they leave their employment 'voluntarily without good cause connected with their work'? We think not. There are several reasons."

The Court holds:

"Considering the above, we do not believe that Clara Huey et al. left their work 'voluntarily without good cause connected with their work' so as to disqualify themselves from the benefits provided by the Act. They were unemployed within the definition of the statute, being in that period 'during which he (they) performed no services with respect to which no wages are (were) payable to him (them).' If the layoff had been six months instead of six weeks, the conclu-

sion might have more readily fit the ordinary understanding of 'unemployed.' But the principle is the same. * * *"

See, also, Texas Employment Commission v. Hansen, 161 Tex. 511, 342 S.W.2d 551; Texas Employment Commission v. Amlin, 161 Tex. 606, 343 S.W.2d 249; and Texas Employment Commission v. Gulf States Utilities Company, Tex.Civ.App., 410 S.W. 2d 322, wr. ref. n. r. e.

■ The right of an employee covered by the Act to participate in the fund created thereby is a part of the compensation earned while he was employed, and is not a gratuity. Friedman v. American Surety Co. of New York, 137 Tex. 149, 151 S.W. 2d 570; Byrd v. City of Dallas, Tex.Com. App., 118 Tex. 28, 6 S.W.2d 738, op. adopted by Sup.Ct.; Western Union Tel. Co. v. Texas Employment Commission, Tex.Civ. App., 243 S.W.2d 217, wr. dis. w. o. j. with written opinion, 150 Tex. 526, 243 S.W.2d 154.

■ A portion of the history of Art. 5221b–3 indicates to us that the Legislature did not intend that retirement under an employer pension plan should ipso facto render one disqualfied from receiving unemployment benefits under the Act. Prior to 1949, an individual was disqualified for benefits for any benefit period with respect to which he is receiving or has received remuneration in the form of *an employer pension plan.* In 1949 the Legislature struck from subdivision (e) (3) of Art. 5221b–3 the disqualification "or employer pension plan", so that it is no longer in the Act. See Historical Note under Art. 5221b–3, Vol. 15, Vernon's Annotated Texas Statutes, pages 417–418.

When the Legislature removed the employer pension disqualification from Art. 5221b–3(e) (3) without preserving a disqualification for those on employer pension plan, it could be presumed to have had the Legislative intent that employees whose employment has ceased under such a plan whether agreed to or not, and who are

drawing a company pension for services already performed over a period of many years, and who are unemployed because they are out of a job, are not thereby disqualified from drawing unemployment benefits.

█ It is our opinion, and we so hold, that the undisputed evidence in the record does not authorize the commission or the trial court's holding that appellant left her last work voluntarily without good cause connected with her work, and that there is no evidence in the record to support such finding or conclusion. Appellant's first and second points of error are sustained.

Appellant's third point of error reads:

"Even if Appellant's separation from her employment should be held voluntary because of a constructive agreement to retire implicit in her continuing work under a compulsory retirement policy, the provisions of Article 5221b–13(a) prohibit such agreements and the Commission and the trial court erred in giving effect thereto."

Art. 5221b–13 reads:

"(a) Waiver of Rights Void: No agreement by an individual to waive, release, or commute his rights to benefits or any other rights under this Act shall be valid, * * *"

Since we have held that appellant did not voluntarily leave her last work, and was therefore not disqualified under the terms of Art. 5221b–3 to receive unemployment benefits, it is unnecessary for us to decide upon the merits of her third point. See Texas Unemployment Commission v. Huey, supra, at page 551 of 342 S.W.2d, next to last paragraph of opinion.

Appellant's fourth and fifth points of error read:

## IV.

"There is no substantial evidence on the record as a whole that Appellant was not available for work during the period from her dismissal through the period of her potential eligibility.

## V.

"The Commission's determination, sustained by the trial court, that Appellant was not available for work and thus ineligible for unemployment compensation is as a matter of law erroneous."

Appellees' reply point reads:

"The findings and decision of the Texas Employment Commission, affirmed by the District Court, that Claimant was not available for work where she failed to make an active, diligent and independent search for work, are supported by substantial evidence in the record and in accordance with the law."

As heretofore stated the decision of the Texas Employment Commission with respect to appellant's right to unemployment benefits was twofold. The first part, treated above, *disqualified* her from receiving six weeks of benefits to which she might otherwise have been entitled under Art. 5221b–3. The second part, which will be considered under these points, imposed an order of *ineligibility* effective June 2, 1965 and noted that the ineligibility would continue until such time as * * * "claimant meets the eligibility requirements of the Act." This order was imposed under the terms of Art. 5221b–2, which provides:

"An unemployed individual shall be eligible to receive benefits with respect to any benefit period only if the Commission finds that:

 *     *     *     *     *     *

(d) He is available for work."

The term "available for work" has not been previously considered by a Texas Court insofar as the Commission's construction that the term imposes on Claimant a duty to independently seek work in order to be eligible for unemployment benefits.

The case of Texas Employment Commission v. Hays, Tex.Sup.Ct., 360 S.W.2d 525, involved a factual situation where the applicant was held to have laid such time or hour restrictions on his availability for work as effectively to detach himself from the labor market in his community, and therefore to render himself not available for work within the meaning or Art. 5221b–2. In the course of the opinion the Court said:

"The phrase, 'available for work,' obviously is ambiguous. It is not defined in the Unemployment Compensation Act. Any effort to define it in language covering every conceivable fact situation would require such generalities as to leave the definition less certain in meaning than the phrase itself. It is usually said to mean 'willing, able, and ready to accept suitable work.' See 55 Yale Law Journal 124; 30 Texas Law Review 735–740. It is also generally recognized that to be available for work an applicant 'must be genuinely attached to the labor market.' Ibid."

This concept of availability for work is very similar to that of other jurisdictions which have examined the availability provisions of their unemployment laws. In Dwyer v. Appeal Board of Michigan Unemployment Compensation Commission, 321 Mich. 178, 32 N.W.2d 434, the Supreme Court of Michigan held that a claimant who had sought work only three or four times during a long period of unemployment was not "available for work" as it construed the term. The Michigan and Texas statutes are very similar on this point. The court said (p. 438):

"The basic purpose of the requirement that a claimant must be available for work to be eligible for benefits is to provide a test by which it can be determined whether or not the claimant is actually and currently attached to the labor market. To be available for work within the meaning of the Act, the claimant must be genuinely attached to the labor market, i. e., he must be desirous to obtain employment, and must be willing and ready to work. Such is the rule in other jurisdictions. See Reger v. Administrator of Unemployment Comp. Act, 132 Conn. 647, 46 A.2d 844; Hunter v. Miller, 148 Neb. 402, 27 N.W. 2d 638. * * *

"The test suggested is subjective in nature. Whether or not a claimant is in fact available for work depends to a great extent upon his mental attitude, i. e., whether he wants to go to work or is content to remain idle. Indicative of such mental attitude is evidence as to efforts which the person has made in his own behalf to obtain work. A person who is genuinely attached to the labor market and desires employment will make a reasonable attempt to find work, and will not wait for a job to seek him out. * * *"

In Virginia Employment Commission v. Coleman, 204 Va. 18, 129 S.E.2d 6, the court held that "availability" requires a claimant to actively seek employment.

Corpus Juris Secundum sets forth the rule as follows:

"A claimant must make an active and reasonable effort to secure suitable work or employment in order to be entitled to unemployment compensation benefits." 81 C.J.S. Social Security & Public Welfare §§ 197, 291.

See, also, Mohler v. Department of Labor, 409 Ill. 79, 97 N.E.2d 762; Chadwick v. Employment Security Board of Review, 192 Kan. 769, 390 P.2d 1017; Fly v. Industrial Commission of Missouri, Springfield Ct. of App., 359 S.W.2d 481; Jones v. Administrator, Unemployment Compensation Act, 27 Conn.Sup. 36, 228 A.2d 807.

■ The Texas Employment Commission is charged with the responsibility to administer the Unemployment Compensation Act. Art. 5221b–9. In carrying out this function, the Commission must formu-

late and execute policies which have a direct compact upon thousands of claimants each year. Where the meaning of a provision of a statute is doubtful or ambiguous (the meaning of the phrase "unavailable for work" in Art. 5221b–2 was held to be ambiguous in T.E.C. v. Hays, supra) the construction placed upon it by the agency charged with its administration is entitled to weight. Calvert v. Kadane, Tex.Sup.Ct. May 1, 1968, 427 S.W.2d 605, citing Slocomb v. Cameron Independent School District, 116 Tex. 288, 288 S.W. 1064, and State v. Aransas Dock and Channel Company, Tex.Civ.App., 365 S.W.2d 220, wr. ref.

In the present case the Commission was presented with the following facts: Appellant retired on June 1, 1965. She filed her first claim for unemployment benefits on June 2, 1965. She was receving a retirement pension, as was her husband. She testified on September 8, 1965, at a rehearing before the Commission granted at her attorney's request after the Commission had already upheld its Appeal Tribunal's report denying her application that " * * * I thought that when I filed for my application with the Employment Commission that it would be their responsibility to get me a job * * * ", and that she had made four applications for work since June 2, 1965. She made no application for social security benefits during the first twenty-six weeks following her retirement.

On the strength of this and other evidence, and on the basis of the entire record before it, the full Commission adopted and the trial court affirmed the following conclusion of the Appeal Tribunal:

"Commission policy has consistently required persons in claimant's situation who have retired from the last employer and who are reaping the benefits of their retirement to demonstrate that they have returned to the labor market by making an active, diligent, independent search for work in the locality where they reside. * * * I do not consider that Claim-

ant's limited search for work is indicative of an individual who is genuinely interested and desirous of securing employment. I therefore conclude that Claimant has not established that she is in the active labor market and available for work. Therefore, an order of ineligibility will be imposed effective June 2, 1965, forward, under Section 4(d) of the Act and will continue until such time as claimant contacts a Commission representative and presents sufficient evidence as to establish her availability for work."

■ The Claimant contends that this Commission policy places a greater burden on a Claimant who is retired and receiving a pension to establish availability for work than on other claimants. We do not agree. There is sufficient evidence in the record for us to conclude that the Commission has consistently required claimants to show availability for work—availability in the sense that a claimant is physically present to work, availability in the sense that a claimant is willing to accept suitable work, availability in the sense that a claimant has shown a genuine desire to work by making a reasonable effort to secure work. It is not our place to pass upon the testimony before the Commission, except to determine whether there was substantial evidence on which to base the conclusions of the Commission. If, on the evidence of her desire and efforts to remain in the labor market, the Commission decided that she had not made the necessary efforts and demonstrated the proper desire to show that she was "available for work" as that term has been defined and construed, and we find that there was substantial evidence before the Commission to justify such conclusion, the Commission's conclusion must be upheld.

■ The determination of the Texas Employment Commission will not be disturbed by the court on appeal if reasonably supported by substantial evidence Nelson v. Texas Employment Commission Tex.Civ.App., 290 S.W.2d 708, wr. ref.; Texas Co. v. Texas Employment Commis-

sion, Tex.Civ.App., 261 S.W.2d 178. The test in applying the substantial evidence rule is to determine whether the evidence is such that reasonable minds could not have reached the conclusion that the administrative tribunal must have reached in order to justify its decision. Texas Liquor .Control Board v. Armstrong, Tex.Civ.App., 300 S.W.2d 146, writ refused; Bichsel v. Strickland, Tex.Civ.App., 371 S.W.2d 785, n. w. h. When an appeal is governed by the substantial evidence rule, the orders of the Commission are presumed to be legal and valid, and the burden is on the party appealing to show that the orders are not reasonably supported by substantial evidence. City of San Antonio v. Texas Water Commission, Tex.Sup.Ct., 407 S.W. 2d 752, 758.

■ The Commission's decision with respect to the Claimant's availability for work is not shown to be unreasonable, arbitrary or capricious, considering the entire record herein, and in our opinion is entitled to be upheld under the Texas substantial evidence rule. Appellant's fourth and fifth points are overruled.

The burden was on appellant on this appeal to show error of the trial court in rendering a take-nothing judgment. Since we have held that the trial court did not err in upholding that portion of the Commission's decision holding appellant *ineligible* to receive unemployment benefits under Art. 5221b–2, the judgment of the trial court is affirmed.

## DISSENTING OPINION

SHARPE, Justice.

I respectfully dissent. Although J. L. Redd is a party to this suit and appeal, reference will be made herein only to appellant Stella M. Redd, his wife, since she is the former employee here involved.

I agree that appellant's first and second points should be sustained and that we need not pass upon the merits of her third point. I approve the discussion of these points in

the opinion of Chief Justice Green. However, I am of the opinion that appellant's fourth and fifth points should also be sustained and that the judgment of the lower court, based on the findings and decision of appellee Texas Employment Commission, should be reversed.

Appellant's points four and five read as follows:

"IV

There is no substantial evidence on the record as a whole that appellant was not available for work during the period from her dismissal through the period of her potential eligibility.

V

The Commission's determination, sustained by the trial court, that appellant was not available for work and thus ineligible for unemployment compensation is as a matter of law erroneous."

On the record before us I am unwilling to find that there was substantial evidence reasonably sufficient to support the determination of the Commission that appellant was not available for work and therefore ineligible for unemployment compensation. I would hold that appellant has carried her burden in such respects and that the said determination of the Commission should be set aside. It is difficult to understand what more could have been done by Mrs. Redd to make herself available for work or to demonstrate in the hearings below that she had done so. Although she was duly registered for work and had regularly reported to the office of the Commission, she was never referred to any employment by it and when she sought work independently after the first Commission decision warned her to push her search for employment, she was rejected, or at least was not accepted.

Only two Texas cases have been cited to us in connection with the question of availability for work. These are Texas Em-

ployment Commission v. Hays, 360 S.W.2d 525 (Tex.Sup., 1962), reversing 353 S.W.2d 924, and Keen v. Texas Unemployment Compensation Commission, 148 S.W.2d 211 (Tex.Civ.App., Galveston, 1941, n. w. h.). In *Hays,* our Supreme Court briefly discussed *Keen,* but held that it had no occasion to approve or disapprove the holding therein made.

In Texas Employment Commission v. Hays, supra, our Supreme Court held in part as follows:

"Ineligibility is to be distinguished from disqualification, although the two may sometimes seem to overlap. 30 Texas Law Review 735, 740–743. Disqualifications are provided in Article 5221b–3. An applicant may meet all requirements of eligibility for benefits but be disqualified from receiving them for a stated period for any of the reasons set out in Article 5221b–3. One disqualification is that the applicant 'has failed, without good cause, either to apply for available, suitable work when so directed by the Commission or to accept suitable work when offered him * * *.' It is this disqualification which seems to overlap ineligibility. An applicant is ineligible for benefits when, for personal reasons, he initially lays such restrictions on his availability for suitable work as effectively to detach himself from the labor market of the community. If no such restrictions are laid initially, the applicant may later become disqualified for benefits, or continuing benefits, by refusing, for the same reasons, to apply for, when directed, or to accept suitable work. Courts have been inclined to refer to an applicant who is denied benefits in either of the two instances as not being 'available for work.'

The phrase, 'available for work,' obviously is ambiguous. It is not defined in the Unemployment Compensation Act. Any effort to define it in language covering every conceivable fact situation would require such generalities as to leave the definition less certain in meaning than the phrase itself. It is usually said to mean 'willing, able, and ready to accept suitable work.' See 55 Yale Law Journal 124; 30 Texas Law Review 735–740. It is also generally recognized that to be available for work an applicant 'must be genuinely attached to the labor market.' Ibid."

In 30 Texas Law Review 735, 744, Comment, "Available for Work" Criterion for Payment of Unemployment Compensation by Gordon Griffin, Jr. (referred to in *Hays*) it is said:

"The meaning of 'available for work' is not subject to exact definition but each case is and should be considered in the light of its own facts. Only in this way can there be any assurance that only the justifiably unemployed receive compensation. Determination of the meaning of 'available for work' is made difficult because facts also bearing on disqualification, ability to work, and unemployment must be considered to determine when a person is available for work. In particular, difficulty is encountered because the Commission determines the question of disqualification even when it has found a claimant unavailable. The reason for such a determination is valid, but there is a danger that in making these determinations one may be misled into a finding of unavailability on facts that are grounds for disqualification only. If the concept of availability and disqualification can be visualized as two large circles that in part overlap, this difficulty and danger may be more easily seen. Within one circle are the facts indicating availability, and within the other are the facts indicating disqualification. In the area where the two circles overlap are the facts that evidence both availability and disqualification. Clearly within this area are such facts as refusal of a job referral. That fact not only may indicate a disqualification under Section 5(c) of the Act, but may also indicate that a claimant is not actually available (either not willing or not ready

to work). It is in this area that consideration must be made of facts that may evidence disqualification in order to decide the question of availability. But when the facts lie within the area occupied exclusively by disqualifications, there is danger in considering them until a claimant has been determined available for work. The fact that a claimant has voluntarily left his last work without good cause connected with his work, a disqualification under Section 5(a), should be within the exclusive area of disqualification, yet apparently because disqualifications have so long been considered at the same time as eligibility this fact has been placed in either the overlap area or perhaps even in the area occupied exclusively by availability. The danger is that in other situations facts that belong in the exclusive area of disqualification will be placed in the overlap area or made a specific test for availability as was done in the cases of students who quit work to enter school.

In general, the Texas Employment Commission seems properly to limit benefits to those claimants who are a part of the labor force, but if in so doing they merge the meaning of availability with disqualification, they will have disregarded the apparent meaning of the Act that eligibility and disqualification serve different purposes and have different meanings."

The Commission, in adopting the findings and conclusions of its appeals tribunal, found in part that Mrs. Redd was physically able to work and that she was available to work, but, nevertheless, *ruled* her to be unavailable and therefore ineligible for benefits under Article 5221b–2(d), V.A.C.S. All members of this Court have agreed that the Commission erroneously concluded that Mrs. Redd was disqualified under Article 5221b–3(a), V.A.C.S. In my view the erroneous conclusion of the Commission concerning disqualification led to its erroneous conclusion concerning ineligibility and tainted the entire determination. The only explanation I can find for the ambiguities

in the findings and conclusions of the commission with respect to "unavailability" is that the Commission was not really addressing itself to "unavailability" and treated Mrs. Redd as "unavailable" because she had allegedly detached herself from the labor market due to the compulsory retirement policy of her employer. The record reflects that the six weeks disqualification imposed under Article 5221b–3(a) had expired on September 21, 1965 when the Commission decided the case on rehearing, but the Commission, nevertheless, adopted its entire decision of August 4, 1965, just as though such disqualification had not run out. I believe that the above-quoted excerpt from 30 Texas Law Review, 735, 744 is applicable here, and particularly the last paragraph thereof. In my view the Commission erred in holding that Mrs. Redd was not available for work and therefore "ineligible" for compensation under Article 5221b–2(d). I would sustain appellant's points four and five which complain of such action.

I further believe it should be pointed out that we are not here dealing with a disqualification under Article 5221b–3(c) which reads as follows:

"If the Commission finds that during his current benefit year he has failed, without good cause, either to apply for available, suitable work when so directed by the Commission or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the Commission. Such disqualification shall be for not less than one (1) nor more than thirteen (13) benefit periods following the failure, as described above to apply for or accept suitable work, the degree of disqualification to be determined by the Commission according to the circumstances in each case."

The disqualification provided by that section does not apply unless an applicant fails to act when directed by the Commission to apply for suitable work or to accept it or to return to customary self-employ-

ment. The Commission did not direct appellant to do any of these things in this case. She did not limit her availability for work and complied with all procedural requirements to entitle her to benefits.

In my view the judgment of the trial court should be reversed. I am unable to find a basis for rendition of the judgment, and the question has not been briefed. I would therefore reverse and remand the case to the trial court.