## TEXAS EMPLOYMENT COMMISSION et al., Appellants,

v.

## James R. HARTZHEIM, Appellee.

### No. 15684.

Court of Civil Appeals of Texas, San Antonio.

April 6, 1977.

Michael E. Stork, Asst. Atty. Gen., Austin, for appellants.

Tom Joseph, King, Joseph & Baucum, San Antonio, for appellee.

KLINGEMAN, Justice.

This case involves a decision of the Texas Employment Commission that a claimant, Janice L. Windrow, was not disqualified from receiving unemployment benefits. This is an appeal from a judgment of the District Court of Bexar County, Texas, holding that such decision of the Texas Employment Commission was not supported by substantial evidence, reversing the decision of the Commission, and ordering a charge back to plaintiff's, James R. Hartzheim, account.

Janice L. Windrow had been employed by Hartzheim for approximately five and one-half years at the time she was discharged. She then filed a claim for unemployment benefits; the appeal tribunal of the Commission held that the claimant was properly discharged for misconduct connected with her work and was disqualified to receive unemployment benefits. The Texas Employment Commission thereafter reversed the decision of the appeals tribunal and held that the actions of the claimant did not constitute misconduct connected with her work.

Hartzheim provided a computer accounting service to clients. Windrow, at the time of her discharge, supervised about five employees, instructing them with regard to their work duties, and a part of her work was spent in running a computer and in coding. It appears from the record that her

work had generally been satisfactory, without any particular discord until the summer of 1974. At this time she took her vacation and after her return some problems arose.

Hartzheim testified that at this time he began receiving numerous complaints from clients, particularly with regard to the speed of the operations. He stated that he had observed that the keypunch machine was not being utilized for approximately two hours a day, generally during the lunch period when at least one of the girls would be gone from 11:30 to 1:30. He asked Windrow to operate a keypunch machine during the period that one was available. Hartzheim testified that despite his requests she did not do such work. The testimony discloses that Hartzheim and Windrow had a rather heated argument after some discussion. Hartzheim testified that at such time, he went into the office and Windrow was sitting at her desk making address corrections although a keypunch machine was available. Hartzheim testified that he spoke "rather harshly to her" but the testimony as to exactly what happened is in some conflict. Shortly thereafter Hartzheim fired Windrow.

Hartzheim testified that Windrow was not performing her job satisfactorily when she came back from her vacation and that this ultimately resulted in his having to let Windrow go. He stated that up until this vacation everything had gone fairly well, that Windrow had been able to maintain her assigned duties, and everything was running fairly compatibly in this area.

Windrow's version is considerably different. She testified that when she got back from her vacation things were quite different—one employee was getting ready to quit, another employee had been hired in her absence, and Hartzheim's sister-in-law was working in the office.

She stated that during the week before she was fired, Hartzheim, Berger (Hartzheim's assistant and computer programmer), and she had a conference with regard to the work; that she was told to arrange the lunch hours so that she could keypunch when one of the girls was out to lunch;

that while she did not keypunch every day, she did do some keypunching; that she understood that she was to do what she could to get the work caught up, and that she made a conscientious effort to do so; that she was only taking about fifteen minutes for lunch and was doing editing and coding as fast as she could; that editing and coding was necessary in order for the others to do keypunching.

She stated that one of the reasons she wasn't doing much keypunching was that there were only two machines available with three girls punching.

She testified that on the Friday immediately preceding her discharge, Berger had told her to watch the computer since he was leaving the office; that when Hartzheim asked her why she wasn't keypunching she told him that she was getting ready to code; that unless she could do more coding, the other girls would not have anything to punch that afternoon.

She further testified that during the period after she returned from her vacation two new girls were being trained, that one of the employees was on vacation, and that it was not possible to keep up with all of the work; and that on the last day of her work basically they were only slightly behind in their work.

■ Appellant's first point of error asserts that the trial court lacked jurisdiction because appellee did not comply with Art. 5221b–4(i), Tex.Rev.Civ.Stat.Ann. (1971), in instituting this cause.

The section here involved reads in part as follows:

Court Review: Within ten (10) days after the decision of the Commission has become final, and not before, any party aggrieved thereby may secure judicial review thereof by commencing an action in any court of competent jurisdiction in the county of claimant's residence against the Commission for the review of its decision,

· · · ··

The decision of the Commission did not become final until February 7, 1975. Appellee instituted his cause of action on Feb-

ruary 6, 1975. Appellee asserts that this is a premature filing and that, therefore, the trial court was without jurisdiction.

In *Texas Employment Commission v. Stewart Oil Co.*, 153 Tex. 247, 267 S.W.2d 137 (1954), the Supreme Court held that a premature filing would not defeat the jurisdiction of the court.[1] In this case, Stewart had filed a petition in the trial court seven days after the adverse ruling of the Commission. The Supreme Court, in rejecting a contention that the trial court was without jurisdiction, said:

> To insist upon the respondent's subsequently filing a duplicate set of papers and obtaining a new filing stamp would be a retreat into formalism wholly inconsistent with the spirit of the Texas Rules of Civil Procedure.

The Court pointed out that the objective of the rules was to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants, and that under such rules it was their duty to see that a case is disposed of upon its merits, where this can be done without doing violence to the rules or injustice to the rights of the parties. The Court held that the premature delivery of the petition to the clerk did not prevent it from taking effect upon the Commission's ruling becoming final; and that they could find no harm done to the Commission by the premature filing.

The thrust of appellee's contention in this regard is that since the Legislature added the words "and not before" to § 4[2] after the Supreme Court's decision, the Legislature, by its action, intended to clear up any ambiguity; that the courts have held other portions of Art. 5221b to be jurisdictional;

and that the same rule should apply to premature filing. Appellant has neither cited, nor have we found, any cases involving premature filing after the adoption of the amendment.

The amendment to the statute is somewhat ambiguous and unclear. The term "with ten (10) days after . . ., and not before" is to an extent contradictory on its face—how can you file or institute an action within ten days and not before? If the aggrieved party files on the tenth day, the contention could be made that it came too late, and if he files or commences his action on the ninth day, it could be contended that it is premature. We do not believe that the Legislature intended that an aggrieved party's substantial rights be lost because of the somewhat unclear wording that is reasonably susceptible to different constructions. We have concluded that a more just and equitable construction is the same as taken by the Supreme Court in *Texas Employment Commission v. Stewart Oil Co., supra.*

We have concluded that under the rationale of the *Stewart* case, appellant's point of error number one is without merit. Appellant has not been deprived of a fair hearing, and we can find no harm done to the Commission by the premature filing.[3] Appellant's first point of error is overruled.

■ Appellant's second point of error asserts that the trial court erred in finding that the decision of the Texas Employment Commission was not supported by substantial evidence.

The courts of this State have consistently held that appeals from decisions of the Tex-

1. Art. 5221b–4(i) then read as follows:
   "Court Review: Within ten (10) days after the decision of the Commission has become final, any party aggrieved thereby may secure judicial review thereof by commencing an action in any court of competent jurisdiction in the county of claimant's residence against the Commission for the review of its decision, . . . ."

2. In 1955 the Legislature amended § 4 to read as follows: "Within ten (10) days after the decision of the Commission has become final, and not before, any party aggrieved thereby

may secure judicial review thereof by commencing an action in any court of competent jurisdiction in the county of claimant's residence against the Commission for the review of its decision, . . . ."

3. In *Lemke v. United States of America*, 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3 (1953), the Supreme Court held that the premature filing of a notice of appeal in a criminal case did not destroy the appeal, and stated that any error, defect, irregularity, or variance which does not effect substantial rights, shall be disregarded.

as Employment Commission are governed by the substantial evidence rule. *Texas Employment Commission v. Holberg*, 440 S.W.2d 38 (Tex.1969); *Redd v. Texas Employment Commission*, 431 S.W.2d 16 (Tex. Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.); *Texas Employment Commission v. Camacho*, 394 S.W.2d 35 (Tex.Civ.App.—Dallas 1965, no writ); *Texas Co. v. Texas Employment Commission*, 261 S.W.2d 178 (Tex.Civ.App.—Beaumont 1953, writ ref'd n. r. e.); *Todd Shipyards Corp. v. Texas Employment Commission*, 245 S.W.2d 371 (Tex.Civ.App.—Galveston 1951, writ ref'd n. r. e.).

There are countless decisions to the effect that the order of the administrative agency must be upheld if it is reasonably supported by substantial evidence introduced in the trial court. *Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022 (1942); *Jones v. March*, 148 Tex. 362, 224 S.W.2d 198 (1949); *Cusson v. Firemen's & Policemen's Civil Service Commission of San Antonio*, 524 S.W.2d 88 (Tex.Civ.App.—San Antonio 1975, no writ); *Texas Liquor Control Board v. Armstrong*, 300 S.W.2d 146 (Tex.Civ.App.—San Antonio 1957, writ ref'd).

In *Railroad Commission v. Shell Oil Co.*, 161 S.W.2d at 1029, *supra*, the Supreme Court set forth the applicable rule as follows:

> The record is to be considered as a whole, and it is for the court to determine what constitutes substantial evidence. The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court. If the evidence as a whole is such that reasonable minds could not have reached the conclusion

that the agency must have reached in order to justify its action, then the order must be set aside.[4]

Appellee asserts that the judgment of the trial court was correct because the appeals tribunal of the Commission ruled against the claimant after hearing the evidence and was in the best position to pass upon the facts; that the Commission, without hearing additional evidence, reversed the appeals tribunal; and that the Commission, in passing on the holding of the appeals tribunal, is also subject to the substantial evidence rule. Appellee cites no authorities in support of this contention and we have found none.

The pertinent portions of Art. 5221b–4(e) (Unemployment Compensation) are as follows:

> Commission Review: The Commission may on its own motion affirm, modify, or set aside any decision of an appeal tribunal on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence, or may permit any of the parties to such decision to initiate further appeals before it. The Commission may remove to itself or transfer to another appeal tribunal the proceedings on any claim pending before an appeal tribunal. Any proceeding so removed to the Commission shall be heard by a quorum thereof. The Commission shall promptly mail to the parties before it a copy of its *findings and decision*.

We do not consider such statute as supporting appellee's contention. We have found no Texas cases directly addressing this question, and authorities that we have found from other jurisdictions are contrary to appellee's contention.[5]

---

4. "In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the

agency in reaching such conclusion is reasonably supported by substantial evidence." 161 S.W.2d at 1029.

5. In *Chellson v. State Division of Employment and Security*, 214 Minn. 332, 8 N.W.2d 42 (1943), the Supreme Court of Minnesota, in interpreting a Minnesota statute comparable to the Texas Unemployment Compensation Act, held: "We determine, therefore, that the test

Moreover, the question before us is—was the order of the administrative agency reasonably supported by substantial evidence introduced in the trial court? In the usual judicial review of an administrative order in Texas, the issue is not whether the regulatory agency actually heard and considered sufficient evidence to reasonably support its action, but whether at the time the questioned order was entered there then existed sufficient facts to justify the agency's order. The evidence actually heard by the agency is not material, but the parties are given a full opportunity in their appearance before a judicial body to show that at the time the order was entered there did, or did not, then exist sufficient facts to justify the entry of the same. *Gerst v. Nixon*, 411 S.W.2d 350 (Tex.1966); *Cook Drilling Co. v. Gulf Oil Corp.*, 139 Tex. 80, 161 S.W.2d 1035 (1942); *Cusson v. Firemen's & Policemen's Civil Service Commission of San Antonio, supra.*

Appellee further asserts that the trial court did not err in finding that the decision of the Texas Employment Commission was not supported by substantial evidence.[6] We disagree.

We have heretofore summarized in some detail the pertinent evidence. While the evidence is in some respects conflicting and perhaps subject to different conclusions, we are limited in our review by the substantial evidence rule, and in such review the issue is not whether or not the agency came to a proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. From a review of the evidence as a whole, we cannot say that reasonable minds could not have reached the conclusion that the Commission reached. We hold that the evidence before us, considered in its entirety, does not warrant the conclusion that the order of the Commission is without support in substantial evidence.

The judgment of the trial court is reversed and judgment here rendered affirming the decision of the Texas Employment Commission.

CADENA, Justice, dissenting.

I cannot accept the conclusion that a suit seeking judicial review of an order of the Texas Employment Commission vests the court with power to review such order where the suit was filed before the order of the Commission became final.

The decision of the Supreme Court in *Texas Employment Commission v. Stewart*

on this appeal is whether there is reasonable support in the evidence to sustain the decision of the director rather than the decision of the appeal tribunal. It has been held under statutes providing for a similar method of review that the final administrative authority has the power to review the evidence and make its own independent findings of fact and render a decision thereon, despite the fact that the findings contained in the prior administrative determination had support in the evidence."

6. In its decision holding that the claimant was entitled to unemployment compensation benefits, the Commission made certain findings of fact and conclusions of law which may be summarized as follows:

"About one week before the claimant's separation the employer told the claimant that she should keypunch during the two hours at lunch each day when the key punch machines were not being used because her department was behind in its work. The claimant keypunched at lunch on one day during her last week. . . The employer asked the claimant once about her not keypunching during the lunch hours.

She told him that she needed to do the coding and editing or there would not be work for the key punch operators. She thought that her actions were in the employer's best interests and were satisfactory to him. On the claimant's last day of work, the employer directed her to keypunch and, after some discussion, she did so. At the end of that day when she left, the work was caught up. However, the employer decided to discharge her because she had not keypunched during the lunch hours, and did so by telephone."

Under its conclusions, the Texas Employment Commission said in part:

"We do not think that the claimant's actions amounted to misconduct connected with the work. She thought that she was performing in the best interests of the employer. On the only occasion when he had questioned her about keypunching during the lunch hours, she explained the reason that she was doing coding and editing instead. When the employer finally specifically directed her to keypunch, she did so."

*Oil Co.*, 153 Tex. 247, 267 S.W.2d 137 (1954), can have no controlling effect today. As pointed out in the majority opinion (n. 1), at the time the *Stewart* case was decided, § (i) of Art. 5221b–4, Tex.Rev.Civ.Stat.Ann. (1971), merely provided that judicial review of a decision of the Commission could be had by commencing an action in any court of competent jurisdiction against the Commission for review of its decision "Within ten (10) days after the decision of the Commission has become final." Without commenting on the propriety of a judicial fiat to the effect that statutes must be construed in a manner consistent with judge-made rules, it is clear that the conclusion that a prematurely filed "appeal" clothes a court with authority to review a decision of the Commission has been repudiated by the Legislature.

The 1955 amendment of the statute permits judicial review of a Commission order if the action seeking such review is commenced "Within ten (10) days after the decision of the Commission has become final, and not before." While the present statute may not be a model of clarity, it is clear that the addition of the words "and not before" was designed to serve some legislative purpose. In view of the fact that the additional words were added at the first legislative session following the *Stewart* decision, it is clear that the Legislature was less than completely happy with the Supreme Court's decision that an "appeal" from a Commission ruling filed in court before the order of the Commission becomes final empowered the court to review such Commission order. In the face of this legislative rejection of the *Stewart* holding, the "rationale" of such holding, however persuasive we may find the Supreme Court's refusal to "retreat into formalism wholly inconsistent with the spirit of the Texas Rules of Civil Procedure," [1] cannot be made the basis for the conclusion that the 1955 amendment of the statute is to be ignored. A judicial pronouncement that a statute means that A is B must be ignored where

the statute has been subsequently amended to provide that A is not B.

I would sustain the Commission's first point of error and hold that the trial court lacked jurisdiction to review the order of the Commission. This requires that the judgment of the trial court be set aside and appellee's suit be dismissed for lack of jurisdiction.

---

1. *Texas Employment Commission v. Stewart Oil Co.*, 153 Tex. 247, 267 S.W.2d at 138 (1954).